Eileen Rejda, appellee, v. Ronald Rejda, appellant,
Robert A. Barlow, Guardian ad litem.

253 N. W. 2d 295

Filed May 11, 1977. No. 40924.

Vestecka & Gorham, for appellant.

Duane L. Nelson, for appellee.

Robert A. Barlow, guardian ad litem.

Heard before White, C. J., Spencer, Boslaugh, McCown, Brodkey, and White, JJ., and Kuns, Retired District Judge.

White, C. J.

This case arose upon an application for modification of a divorce decree filed by the appellant, wherein he prayed that the custody of the two minor children of the parties be changed from the appellee to himself. The appellee filed her answer and cross-petition, praying for dismissal of the appellant's application and requesting an increase in the amount of child support. A guardian ad litem was appointed by the court for the two minor children. Trial was held over an extended period. During this period, on December 22, 1975, the District Court informed the parties that it might be the recommendation of the guardian ad litem that the parental rights of the

parties to the children be severed. On February 13, 1976, the District Court entered an order severing the parental rights of both parties and placing custody of the two minor children with the chief juvenile probation officer of Lancaster County, Nebraska, for permanent placement and adoption. The appellant's motion for a new trial, and the appellee's motion for modification of order, were both overruled, and this appeal followed.

The appellant assigns as error the termination of his parental rights by the District Court. The appellee does not appeal or contest the decision of the District Court to terminate her and the appellant's parental rights to the two minor children involved.

The appellant first asserts that the District Court was without power to terminate his parental rights. The appellant's argument in this regard is based upon our recent decision in Sosso v. Sosso, 196 Neb. 242, 242 N. W. 2d 621 (1976), wherein we held that: "Under the Nebraska statutes a termination of parental rights can only be decreed by a juvenile court in a proceeding brought for that purpose." Our ruling in that case, however, was made prospective: "It appears that in some instances District Judges have terminated parental rights in divorce cases. With that in mind, we wish to make it clear that the rule herein laid down, except as to this case, shall be prospective in nature and fully effective as of June 1, 1976."

The District Court's order was dated February 13, 1976. The motions of the parties for a new trial and for modification of order were overruled on May 27, 1976. The holding of Sosso is thus not applicable to this case.

On December 22, 1975, during the course of hearings in this case, the District Court announced the possibility that the guardian ad litem might recommend that the parental rights of both parents be severed. The parties were thus given notice of this

issue and had adequate opportunity to meet this issue. Under the circumstances of this case the District Court had jurisdiction to terminate appellant's parental rights. There is no merit to this contention.

The appellant next argues that there was insufficient evidence to support the court's decision to terminate his parental rights.

The natural rights of a parent to the custody of his children are not absolute. Pollard v. Galley, 178 Neb. 587, 134 N. W. 2d 261 (1965). " 'A court may terminate parental rights when it finds such action to be in the best interests of the child * * *.' " State v. Johnson, 196 Neb. 795, 246 N. W. 2d 591 (1976). In cases involving child custody determinations the findings of the trial court, both as to the evaluation of the evidence and as to its judgment as to the matter of custody, will not be disturbed on appeal unless there is a clear abuse of discretion or the decision is against the weight of the evidence. State v. Norwood, 194 Neb. 595, 234 N. W. 2d 601 (1975).

The record shows that Monique was born in 1969 and was 6 years old at the time of the trial. Collette is approximately a year older than her sister. Both children lived with their father and mother until December of 1971, when the appellant and appellee were separated prior to their divorce. The appellee testified that at the time she left the appellant in December 1971, the appellant was drinking heavily and would consume 12 to 15 bottles of beer in one night. There were times, she stated, when he would blackout completely. During the time the original divorce action was pending, the appellant lost his job with the Lincoln police department, partly because of drinking.

After December of 1971, the appellee took the two children and moved into her mother's apartment. It was very small, just one bedroom. In February 1972, the appellee placed the girls in foster care. The

appellant was given custody to the children in the divorce action by the court. The children lived with him from March 1972 until November 1972.

The appellee stated that she visited the appellant's home during this period and found the beds unclean, dirty clothes piled up, and food and beer cans strewn about the house. The appellee's mother also visited the appellant's home during this period to babysit and visit her grandchildren. She testified that the house was filthy, with garbage piled up on the back porch and in the kitchen; dirty clothes and dishes piled up; beer cans, ashes, and ashtrays all over the place. She stated that the children were dirty at times, were not too clean, and had the run of the place. The appellee's father testified that he would visit his granddaughters two or three times per week. He stated that they usually wanted something to eat and that he would provide them with something. He stated that there was enough beer around the house, but little food, however.

Custody of the two girls was returned to the appellee in November 1972. The appellant voluntarily consented to this change of custody and was ordered by the court to pay $30 per month per child in child support commencing on December 1, 1972. The appellee testified that between November 1972, until October 1974, she received only about $90 from the appellant for child support. She also testified that between the spring of 1973 and the summer of 1974, the appellant did not visit the children. In 1974, the appellant was fired from a position with the University of Nebraska campus police because of a drunk driving offense.

In November 1974, the appellee voluntarily placed Monique with a couple in Seward, Nebraska, the Lees. In June 1975, the appellee voluntarily placed Collette with a Lincoln couple, the Websters.

At the court's instruction, both children were examined by a qualified psychologist. In her evalua-

tion of Collette, the psychologist stated that: "Feelings about her natural father that were elicited were largely negative, consisting of unpleasant memories and fears." She reported that both children had little emotional ties to their natural parents. She found that both children needed a permanent, stable placement and concluded that to place them with their natural father again would disrupt the emotional security they have. The psychologist stated that both children felt secure in their present environments and recommended that each child be permanently placed with the foster families. They were then with the Lees and the Websters.

The record shows that the Lees and the Websters have both the means and the desire to provide each girl with a stable, loving, and emotionally secure home.

These children have been passed back and forth between their natural parents. Each parent has had ample opportunity to provide an adequate home for these children. The appellant argues that he has now solved his previous problems and is able to provide the children with an adequate home. Both children are now in stable, healthy, and emotionally secure homes. The appellant asks us in effect to remove the girls from these stable homes and give him yet one more chance. This we will not do.

The decision of the District Court to terminate the parental rights of the natural parents to these children is overwhelmingly supported by the evidence and clearly is in the best interests of these children.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

WHITE, C. THOMAS, J., concurring.

The case of Sosso v. Sosso, 196 Neb. 242, 242 N. W. 2d 621, was decided prior to the time this writer joined this court. I would not have voted with the majority on that matter.