IN RE INTEREST OF DANNY BLUNK ET AL., CHILDREN UNDER EIGHTEEN YEARS OF AGE.
JOHN S. MINGUS, APPELLEE, v. ADRINA BLUNK STUCHLICK, APPELLANT, NEBRASKA CHILDREN'S HOME SOCIETY, APPELLEE.
174 N. W. 2d 194

Filed February 6, 1970. No. 37351.

John McArthur and A. James McArthur, for appellant.

Robert A. Munro, for appellee Mingus.

Lane, Baird, Pedersen & Haggart, Charles P. Fike, and Gary F. Anderson, for appellee Nebraska Children's Home Society.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a juvenile action brought under the Juvenile Court Act, Chapter 43, article 2, R. R. S. 1943, alleging that appellant's seven children were neglected and dependent and in need of special supervision. This action was commenced by a supplemental petition filed in the Buffalo County district court on March 14, 1969. In the original proceeding initiated on October 30, 1967, the district court for Buffalo County, Nebraska, took jurisdiction of the children, found that they were neglected and dependent, and placed them in the custody, supervision, and control of the appellee, Nebraska Children's Home Society. The three youngest children have been placed for adoption by the Society, and it appears that they have been living in their adoptive homes since about January 26, 1968. The County of Buffalo and the Nebraska Children's Home Society were joined in this action and are the appellees in this case. The district court, on May 15, 1969, entered an order finding the appellant

unfit to have the custody of her children and terminated her parental rights. We affirm the judgment and order of the district court.

A court may terminate parental rights when it finds such action to be in the best interests of the child, and it appears from the evidence that the parent has substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection, or a parent is unfit by reason of debauchery or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child. § 43-209 (2) and (4), R. R. S. 1943. See, also, Hubbard v. Loewenstein, 181 Neb. 96, 147 N. W. 2d 164.

In our review of the facts, tried de novo here on appeal, the fact that the trial judge saw, heard, and observed the parties and the witnesses is an important consideration in determining the weight and significance of the testimony in a custody proceeding. Hubbard v. Loewenstein, *supra*. A review of the evidence in this case leads us to the conclusion that the record supports the following findings of fact by a preponderance of the evidence: Appellant is the natural mother of the seven children and was divorced from their father, now deceased, in the summer of 1967. Appellant was granted custody of the seven children and lived with them in Kearney, Nebraska. Subsequent to the divorce the appellant was the recipient of support payments for the children and was under the supervision of the county welfare department.

A welfare worker of 13 years' experience testified as to lack of cleanliness in the home and failure of appellant to properly supervise the children. She had informed appellant that complaints had been received about her conduct with various men in the home. We are unable to determine from the evidence whether one Gene Jordan (separated but not divorced) or one Grant Phifer was the first liaison of appellant.

About September 14, 1967, appellant was again advised that there had been a complaint about men living in her home, and she admitted that one Charles Gay had a bedroom on the front porch and was living there. In any event the relationship with Grant Phifer, beginning in the summer of 1967, resulted in his moving into her home with the children on or about October 17, 1967. Despite objections by the welfare worker, appellant persisted in this conduct and in living with Phifer. Phifer was a heavy drinking, dissolute, completely irresponsible, and perhaps dangerous person, and at various times the appellant was afraid of her life from beatings.

On the evening of October 24, 1967, a deputy from the Buffalo County sheriff's office appeared at the appellant's home with a warrant for the arrest of Grant Phifer. On the next day, October 25, 1967, the appellant went to the Buffalo County welfare office and represented that she was going alone to Des Moines, Iowa, to visit her ex-husband who, she said, had called her to come and see him and that Grant Phifer was no longer in her home. Her assistance check, which had been withheld from her, was given to her and later in the day, appellant left for Colorado with Phifer. The evidence is undisputed that upon reaching Colorado appellant posed as Phifer's wife and lived with him in several places for a period of time of approximately 2 months.

Prior to leaving for Colorado appellant had made no provision for the care of her seven children. The story of her life in Colorado with Phifer is one of drinking and fighting as a result of which she finally left Phifer. She had notified neither the welfare department nor her own mother, Mrs. Ackerman, prior to leaving, and on October 29, 1967, 4 days after leaving with Phifer, Mrs. Ackerman discovered this situation as a result of a visit from a family friend and one of the children who advised that his mother was not at home. The children were removed to Mrs. Ackerman's home and as a result

the original petition in this case was filed.

During the time appellant was in Colorado she did correspond with her mother. Between November 15, 1967, and December 13, 1967, the date set for the hearing on the custody of her children, the appellant received from her mother two copies of the published legal notice in the Kearney daily paper, was advised by her mother that proceedings were pending to permanently remove her children from her custody, and the district court itself in two letters which were delivered to the appellant prior to the hearing advised her of the hearing and suggested that she make an appearance and retain an attorney to represent her. Appellant not only failed to appear at the hearing or take any steps with relation to the care and custody of her children, but continually advised her mother to not disclose her whereabouts. Although the appellant was working and, of course, entitled to charity relief to assist her, the only attempt to provide adequate food, shelter, and supervision for her children was her request by letter to her mother to take care of the children. Her written correspondence to her mother during this period reveals the appellant was at a minimum, indecisive as to what, when, or how she could ever discharge her parental responsibility toward her children.

The record shows a careful consideration by the court of the rights of the parties, and it is clear that there was ample opportunity for appellant to reform her conduct, and to return to her children within a reasonable time. Finally, on January 26, 1968, a further hearing was held before the district court for Buffalo County, Nebraska, and the children were ordered to be placed in the Nebraska Children's Home Society in Omaha, Nebraska, where they have been since that day except for the placement of three smaller children in adoptive homes about that date. In the meantime the appellant had become acquainted with another man and shortly after leaving Grant Phifer appellant married Paul

Stuchlick, a divorced man with three minor children.

Stuchlick, appellant's present husband, is only 29 years of age. He has been employed in four different jobs in the past year before these proceedings were initiated. He was divorced October 22, 1965, by a former wife, has three children and has paid nothing on a child support decree in the sum of $60 per month for support of the three children. He has not seen his children since June 1965 although they have been within a distance of approximately 250 miles from his residence.

The record herein abundantly, if not conclusively, supports the findings of the district court that these children were abandoned; that they lacked proper parental care by reason of the fault and habits of their mother; that the appellant, although able to do so, neglected and refused to provide the necessary and proper subsistence and care for the health, morals, and well-being of the children; and that, therefore, they were neglected and dependent within the meaning of sections 43-201 and 43-209, R. R. S. 1943.

Turning to the question of the present disposition by the court of the children, appellant now contends that she loves her children and is presently willing to provide a home with adequate supervision and care for them. The proper rule in this situation is that where parental unfitness is established, the court's sole concern is the welfare of the children. Mullikin v. Lutkehuse, 182 Neb. 132, 153 N. W. 2d 361.

We are mindful of the compelling considerations present to avoid separating the seven children of this family from each other and from their natural mother. It appears from the record that these children are living in and have adapted to a clean and wholesome environment, are properly fed and taken care of, and are receiving treatment and care far superior to that they received in the custody of the appellant. A further and overriding consideration, also, is that three of the children have already been placed in adoptive homes for a

period of now approximately 2 years and have developed the attachment, love, and adjustments of a normal home and parental relationship. We agree with the trial court that it would be unconscionable to wrench these three children away from their adoptive parents and the other four from the Nebraska Children's Home Society during their impressionable years and restore them to their mother upon the mere representation that she has reformed. As we have mentioned the trial court's judgment in this situation, having seen, heard, and observed the parties involved, is entitled to great weight under the circumstances. Moreover we are persuaded in this situation by the fact that the purported reformation of the appellant's home and environmental situation is primarily to be accomplished by a man 29 years of age who has not maintained or paid his child support payments to his previous wife, maintains an erratic employment record, and does not show sufficient interest in his own children to visit them for the past 4 years.

We feel, as the trial court must have felt, that the appellant has not sufficiently demonstrated a character, capacity, and a creation of proper circumstances in which these children may be safely returned to her unsupervised custody and control. The primary concern is for the best interests of the children. Considering all of the circumstances we feel that the actions of the proper authorities concerning the welfare and the care of these children and the judgment of the district court concerning them should be affirmed.

The judgment of the district court is correct and is affirmed.

AFFIRMED.