IN RE INTERESTS OF AUBREY JOHNSON ET AL., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. ANNETTE M. JOHNSON, APPELLANT, IMPLEADED WITH WILLIE CALVIN WRIGHT, ALSO KNOWN AS WILLIAM WASH, APPELLEE.
246 N. W. 2d 591

Filed November 3, 1976. No. 40531.

David J. Cullan of Cullan & Cullan, for appellant.

John J. Reefe, Jr., for appellee State.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an appeal arising out of proceedings in the Separate Juvenile Court of Douglas County, Nebraska. This action was commenced by the filing of a supplemental petition on May 20, 1974, seeking to have the appellant's three minor children, Aubrey Johnson, Bridgette D. Wright, and Carmencita A. Johnson, adjudicated neglected and dependent children, and to have the parental rights to these children of the appellant, the natural mother, terminated.

Pursuant to section 43-206.03, R. S. Supp., 1974, an adjudication hearing was held on October 9, 1974. The court, by order dated March 4, 1975, found that Carmencita was a child within section 43-202 (2), R. S. Supp., 1974, and directed that Carmencita continue in the custody of the Douglas County social services (where she had been placed by a previous order dated May 28, 1974), pending a disposition hearing. The supplemental petition concerning Aubrey and Bridgette was dismissed.

A disposition hearing was held on June 10, 1975. The court, by order dated August 29, 1975, found that Carmencita was a neglected child within the meaning of section 43-209 (2), R. S. Supp., 1974, and that it was in the best interests of Carmencita that the appellant's parental rights be terminated. It ordered that Carmencita remain temporarily in the custody of the Douglas County social services and directed that a plan for her permanent placement and adoption be submitted. We affirm the judgment and order of the Juvenile Court.

It is contended on appeal that there was insufficient evidence to support the Juvenile Court's findings that Carmencita was a neglected child within the meaning of sections 43-202 (2) and 43-209 (2), R. S. Supp., 1974, and that it was in the best interests of Carmencita that the appellant's parental rights be terminated.

"An appeal of a case brought under Chapter 43, article 2, R. R. S. 1943, is heard in this court by trial de

novo upon the record." State v. Kinkner, 191 Neb. 367, 216 N. W. 2d 165 (1974). See, also, Mullikin v. Lutkehuse, 182 Neb. 132, 153 N. W. 2d 361 (1967). However, even though trial is de novo upon the record, the findings of fact made by the trial court will be accorded great weight. This is because the trial court heard and observed the parties and witnesses. State v. Kinkner, *supra;* Mingus v. Stuchlick, 185 Neb. 139, 174 N. W. 2d 194 (1970).

The evidence in this case, as revealed by the record, is: At the adjudication hearing the following facts were stipulated between the parties. On February 24, 1974, Carmencita was observed with two scratches on her right hip, two bruises in the middle of her back, and an approximately 1-inch round sore on her calf. On April 16, 1974, Carmencita was observed with bruises on her stomach and upper arms. On May 3, 1974, Carmencita had bruises and red welts on her back, upper arm, and right calf. On all three of these occasions, Carmencita indicated that her mother had inflicted the injuries with an electrical cord. On direct examination regarding the first incident, the appellant testified that she whipped Carmencita because she had lied about wetting herself and this made her mad. Concerning the third incident, the appellant testified that she did it "out of sheer anger." On why she used an electrical cord for the whippings, the appellant testified, "I don't keep belts and stuff, you know, around the house because I know how I am." She testified that she was in no position to govern the children with caseworkers constantly there because they say something every time they see a mark on the child, and, also, the "Day Care" preaches to her constantly every time they see these marks.

On cross-examination, appellant admitted that she had previously been in court for inflicting injuries to her children, and the court had found that on December 8, 1971, Carmencita suffered various bone fractures and

bone trauma. She also admitted the court had found that on January 27, 1971, both Carmencita and Bridgette suffered severe scratches and scars over their legs and backs. She further admitted that on September 2, 1971, she called her caseworker and told her to get her kids because she felt like she could have killed them. She also testified that on the Sunday prior to the hearing, the kids went off and she could not find one of them, that it upset her, and "I could have killed her when I got to her," but a neighbor had talked to her and calmed her down.

At the disposition hearing, reports from the Juvenile Court, child protective services, and the Douglas County welfare administration were received into evidence. The authors of these reports were extensively cross-examined. These reports reveal that the appellant has repeatedly refused to cooperate with counseling which was offered in an attempt to solve her problem with her children, her finances, and her housing. During a 12-month period from 1974 to 1975, the appellant lived in six different places, and was evicted from three of these. Occasionally, the appellant would run out of food for herself and her children and would have to call for assistance. During the period that Carmencita had been in foster care, the appellant visited her about seven times, and did not want an ongoing, regular visitation schedule. At the time of the hearing, she was living, with her two remaining children, in a two-bedroom apartment with two men whom she described as her "room mates." The appellant has been for the most part unemployed, and did not think that she would be working in the future.

The above evidence was more than sufficient to support the Juvenile Court's findings that Carmencita was a neglected child within the meaning of sections 43-202 (2) and 43-209 (2), R. S. Supp., 1974.

We turn now to the Juvenile Court's determination that the best interests of Carmencita required the ter-

mination of the appellant's parental rights. "A court may terminate parental rights when it finds such action to be in the best interests of the child and it appears from the evidence that the parent has substantially, continuously and repeatedly neglected the child and refused to give the child the necessary parental care and protection." Healey v. Hartman, 188 Neb. 682, 199 N. W. 2d 26 (1972). See, also, Hubbard v. Loewenstein, 181 Neb. 96, 147 N. W. 2d 164 (1966). In cases involving child custody determinations in Juvenile Court, the findings of the trial court, both as to evaluation of the evidence and as to its judgment as to the matter of custody will not be disturbed on appeal unless there is a clear abuse of discretion or the decision is against the weight of the evidence. State v. Norwood, 194 Neb. 595, 234 N. W. 2d 601 (1975); State v. Randall, 187 Neb. 64, 187 N. W. 2d 586 (1971); Jones v. Jones, 183 Neb. 223, 159 N. W. 2d 544 (1968).

There was no abuse of discretion by the Juvenile Court in making the determination that it did. The record shows a lengthy and repeated history of violence by the appellant against this child. She has been noncooperative with attempts to solve her problems. In the last few years there seems to be little, if any, possible change in her attitude or life-style. The record shows that Carmencita is now 7 years old. She was in foster care from February 14, 1972, until March 24, 1973, and has been in foster care from May 28, 1974, until the present, almost 4 years, and appears to be doing well in her foster home. The findings and determination of the Juvenile Court that the appellant's parental rights should be terminated are without error.

The judgment of the Separate Juvenile Court is correct and is affirmed.

AFFIRMED.