IN RE INTERESTS OF CHRISTOPHER J. TIBBS, DANICA TIBBS, AND SUSAN TIBBS, MINOR CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MELVIN TIBBS, APPELLANT, IMPLEADED WITH JOANNE TIBBS, APPELLEE.

248 N. W. 2d 330

Filed December 22, 1976. No. 40550.

Jerry L. Snyder, for appellant.

Charles W. Balsiger, for appellee State.

K. E. Mahlin, for appellee Joanne Tibbs.

Dean Dalke, guardian ad litem of Christopher Tibbs et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

On or about December 26, 1974, the county attorney of Gage County, Nebraska, filed separate amended petitions in the county court of Gage County, juvenile division, alleging that Christopher J. Tibbs, age 5, Susan Tibbs, age 4, and Danica Tibbs, age 2, the children of the appellant, Melvin Tibbs, and his wife, Joanne Tibbs, were children as described in section 43-202(2) (b)(c) (e), R. S. Supp., 1974, and further alleging that the parental rights between the parents of said minor children should be terminated due to the fact that the parents have substantially and continually or repeatedly neglected the children and refused to give the children necessary parental care and protection.

Section 43-202, previously referred to, provided, so far as material herein, that the county court in each county shall have: "Exclusive original jurisdiction * * * as to the following: * * * (2) Any child under the age of eighteen years * * *; (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects, is unable, or refuses to provide proper or necessary subsistance, education, or other care necessary for the health, morals, or well-being of such child; * * * or (e) who is in a situation or engages in an occupation dangerous to life or limb

or injurious to the health or morals of such child; * * *." Section 43-209, R. S. Supp., 1974, provides, among other things, that: "The court may terminate all parental rights between the parents * * * and such child when the court finds the action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exists: * * * (2) The parents have substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection; * * * (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; * * *."

A hearing was had on the three petitions in the Gage County court on January 17, 1975, on which date the court entered an order finding that said children were those described in section 43-202, R. S. Supp., 1974, and also finding that there were sufficient facts to terminate all parental rights of both parents. However the court reserved ruling as to whether the parental rights would be terminated until further order of the court. A further hearing was held in the county court on February 11, 1975, in which the court reaffirmed the findings contained in its order of January 17, 1975, again without a determination at that time to terminate the parental rights of the parents. The court placed the children temporarily with the welfare office of Gage County and granted physical custody of the children to the appellant, Melvin Tibbs, subject to the following terms and conditions: (1) That he enroll Christopher in kindergarten in Beatrice; (2) that he enroll Susan and Danica in a day-care center in Beatrice and provide adult supervision for the children when he could not be with them; (3) that he live alone with the children, but that the mother, Joanne Tibbs, was to have the right to visit said children from 1 p.m. to 5 p.m., on

Sundays. The hearing on the adjudication of parental rights was continued to a future date.

An appeal was taken to the District Court for Gage County where, on July 3, 1975, the court affirmed the finding of the county court that the minor children are ones described in section 43-202(2), R. S. Supp., 1974, but found that since no order had been entered by the county court with regard to the termination of parental rights, there was no basis for consideration of that issue by the District Court; and it remanded the proceedings to the county court with directions that the county court make and enter its order and judgment with respect to the prayer for termination of parental rights on or before September 5, 1975.

An adjudication hearing was held in the county court on August 28, 1975, and an order was entered on that date terminating the parental rights of both parties, awarding the care of said children to the Nebraska State Department of Public Welfare with authority to consent to the legal adoption of said children. In its order the court found that the parents had substantially and continually or repeatedly neglected the children and refused to give the children the necessary parental care and protection, and that grounds exist for termination of the parental rights of each parent; and the court further found that it was in the best interests of said children that all parental rights should be terminated.

The appellant then perfected his appeal to the District Court for Gage County, which, on October 16, 1975, consolidated the three cases; and, on motion of the State, affirmed the judgment of the county court terminating the parental rights, and placing the children with the Nebraska State Department of Public Welfare. The court specifically found that the evidence adduced supported the action of the county court and that the action of said court was not an abuse of discretion. It should be noted that in all these proceedings the chil-

dren were at all times represented by a guardian ad litem appointed by the court.

The appellant has appealed from the decision of the District Court to this court, challenging the termination of his parental rights and the sufficiency of evidence in support thereof. Although a great deal of evidence was presented in all the hearings with reference to the conduct and mental capacity of Joanne Tibbs, wife of Melvin Tibbs, the evidence adduced is uncontradicted that she suffered from schizophrenia, chronic undifferentiated type, without any prospects of being cured, and that she had injured the children and others in the past, and could be a danger to them in the future, without being aware of the consequences of her behavior. The evidence indicates that she has now moved to her parent's home in New Jersey, and is no longer residing with appellant; and also that separation proceedings instituted by appellant are pending. However she did not file a notice of appeal in this case, and her parental rights are not an issue in this appeal. The issue to be decided herein is whether the facts justify the termination of the parental rights of the father, Melvin Tibbs, or whether the courts below abused their discretion in so doing.

It is the contention of the appellant that the courts below, in deciding that issue on the basis of what was in the best interests of the children, ignored the natural rights of the parents to their children. This court has held that while every effort should be made to protect the rights of parents to their children, the public also has a paramount interest in the protection of the rights of those children. The right of parental control is a natural, but not an inalienable, right. State v. Loomis, 195 Neb. 552, 239 N. W. 2d 266 (1976). We have also held that an appeal of a case brought under Chapter 43, article 2, R. R. S. 1943, is heard in this court by trial de novo upon the record. See State v. Johnson, 196 Neb. 795, 246 N. W. 2d 591 (1976), and cases cited therein.

We have also held that even though the trial is de novo upon the record, the findings of fact made by the trial court will be accorded great weight for the reason the trial court heard and observed the parties and the witnesses. State v. Johnson, *supra;* State v. Kinkner, 191 Neb. 367, 216 N. W. 2d 165 (1974); Mingus v. Stuchlick, 185 Neb. 139, 174 N. W. 2d 194 (1970).

Numerous witnesses testified at the various hearings held in connection with the Tibbs children, and a considerable volume of evidence was received, some of it contradictory. No purpose would be served in detailing the testimony of the various witnesses. We have examined the entire record and have concluded that there is ample evidence in it to support the findings of the District and county courts that appellant substantially and continuously or repeatedly neglected to give the children the necessary parental care and protection so as to justify the termination of his parental rights.

The record reflects that Melvin Tibbs is a man 39 years of age who had served in the military service in Korea and who had received an honorable discharge. He married Joanne Tibbs in 1968 and is the father of the three children involved in this action. He is engaged in part-time farming and part-time construction work; and, for a period of approximately 1 year prior to the proceedings herein, was in the process of remodeling an old house in Virginia, Nebraska, in which he and his family resided. The record reveals that in December of 1974, prior to and at the time of the institution of the proceedings, and notwithstanding that he was receiving reasonably good earnings, the home he provided for his family was dirty, disorderly, and unsanitary, as amply verified by photographs of the home introduced in evidence and by the testimony of witnesses. There is testimony that the children were frequently unclean and dressed in inadequate and ill-fitted clothing, and were often unclean when taken to the day-care center in Beatrice pursuant to the order

of the court. There is also evidence that the child Christopher had a penchant for destroying toys at the day-care center. The record reveals that appellant on occasions acted violently toward both his wife and his children, and there is testimony that Christopher had a mark on his back as the result of being hit by the buckle on a belt while being disciplined by appellant. Witnesses also testified that the youngest child, Danica, received a cut on her body from a broken ash tray as the result of an accident which occurred when appellant pushed or shoved his wife. Also, it appears that two of the children had continuous bedwetting problems. Although Melvin Tibbs attributed many of those conditions to the fact that he was unable to get his wife Joanne to take her medication and properly supervise the children, the fact is that after the first hearing in county court, he violated the order of the court entered at that time directing him to live alone with the children, but granted Joanne visitation rights. The evidence reveals that he often allowed her to stay over night with him and the children and also allowed her to be with the children while he was at work.

In the original hearing in county court, Melvin Tibbs testified that his wife was a fine mother and housekeeper, but in the hearing in District Court he changed his testimony. In explaining why he had taken his wife back to New Jersey to reside with her parents, and was willing to proceed with a separation action pending between them, he testified that he felt his wife Joanne was totally incapable of taking care of the children and that her presence would result in the mental impairment of the children, which resulted in a comment by the District Judge that he believed the appellant would willingly change his testimony to substantiate his position at any given time.

There is, however, evidence in the record favorable to appellant to the effect that the children had been examined by doctors who had found them normal, both

mentally and physically, and that they were not malnourished. Also in evidence is a letter written to the court by a juvenile probation officer of Gage County, dated May 15, 1975, indicating that on an apparently unannounced visit to the Tibbs home the officer found the rooms "relatively clean," with food in the refrigerator, childrens' clothes in the closet, and toys for them to play with. The appellant denied he had hit or beaten the children, but his wife, Joanne, testified that appellant had thrown the boy Christopher across the room onto a metal headboard of a bed, causing injuries, approximately 2½ years prior to the hearing. Notwithstanding Joanne's mental condition, the weight of her testimony was for the court, who observed her while she testified.

Although appellant has indicated a willingness to accept conditions of close supervision of his family by the State Department of Public Welfare if the children are left in his custody, it must be remembered that he has already had one chance to do that, as he was given physical custody of the children under supervision of the Welfare Department from approximately February 11, 1975, the date of the original order of the county court, to approximately August 28, 1975, on which date the county court entered its order providing for the termination of parental rights, a period of over 6 months. During that period, he violated the clear order of the court, and the condition of the children did not appear to have improved. Although the appellant would like additional time to demonstrate his ability to properly care for his children, we point out that this litigation has been pending for approximately 2 years, and the best interests of the children require that it be brought to final conclusion without further delay.

We conclude there is sufficient evidence in the record to justify the action taken by the courts below and the judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent. First, the opinion recites that Joanne Tibbs is no longer in the home of the appellant. It was Joanne's unsupervised presence in the home which constituted the danger to the children. Her absence removes the sole justifiable reason for absolute termination of the parental rights of the appellant. A parent's right to the custody, care, companionship, and love of his or her childen ought not to be taken away simply because that spouse found it difficult to finally choose between his duty to his wife and his duty to his children. This court makes specific mention of Joanne's testimony that Tibbs had thrown one of the children across the room. Tibbs absolutely denied this. That Joanne Tibbs was and is a badly mentally disturbed person, divorced from reality, is clearly evidenced by the reading of her testimony in the record. No credence whatever should be placed on such testimony.

Secondly, the opinion, at least by implication, denigrates the natural and fundamental right of a parent to his child and the right of a child to his parent. This case involves not mere custody, but absolute termination of the parent-child relationship. That relationship ought not to be lightly severed. A parent may, of course, by misconduct which jeopardizes the permanent welfare of the child, forfeit his right to custody or even in extreme cases to the parent-child relationship, but before a court takes such a drastic step a necessity must be extremely clear. I do not believe it is in this case.

One of the things we are sometimes inclined to forget is what may happen to such children when the parental relationship is terminated. Frequently they become mere wards of the state, inmates of institutions or foster homes, which in many cases cannot replace even a less than perfect parental relationship.

The statement in this case and in State v. Loomis, 195 Neb. 552, 239 N. W. 2d 266, that the right of the

state in the welfare of the child is paramount to that of the parent, does not, I believe, conform to the philosophical and historical views which have prevailed in this country from the beginning. The natural rights of parent and child were, I am sure, considered so obvious and fundamental that no special mention of them in the Bill of Rights was thought to be required. The mutual rights of parent and child are, I believe, among those "retained by the people" under Amendment IX to the Constitution of the United States.