IN RE INTEREST OF TABITHA CHANT, JESSE THOMAS, AND WILLIAM THOMAS, CHILDREN UNDER EIGHTEEN YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. JESSE TYSON CHANT AND ROSE MARIE THOMAS CHANT, NATURAL PARENTS, APPELLANTS.
IN RE INTEREST OF REBECCA ANN CHANT, A CHILD UNDER EIGHTEEN YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. JESSE TYSON CHANT AND ROSE MARIE THOMAS CHANT, NATURAL PARENTS, APPELLANTS.

277 N. W. 2d 97

Filed March 27, 1979. Nos. 41990, 41989.

Reedy, Schiltz & Prohaska, for appellants.

Donald L. Knowles, Douglas County Attorney, and Lee C. Brawner, for appellee.

Heard before BOSLAUGH, CLINTON, and WHITE, JJ., and RIST and WINDRUM, District Judges.

WINDRUM, District Judge.

Jesse Tyson Chant and Rose Marie Thomas were the natural parents of three children whose names and dates of birth are as follows: Tabitha Chant, February 8, 1973; Jesse Thomas, January 3, 1974; and William Thomas, January 3, 1974. On April 7, 1975, a petition was filed in the Separate Juvenile Court of Douglas County, Nebraska, in the interest of said minor children. The natural parents of the children were thereafter married on April 16, 1975. The parents did not resist detention of the three children. The adjudication hearing was held on August 28, 1975, at which time the original petition was amended to strike therefrom the prayer to terminate the parental rights of the parents in said children. All of the parties, including an attorney representing the children as guardian ad litem, stipulated to the facts in the amended petition. The court, at the conclusion of the hearing, found the children to be neglected within the meaning of section 43-202 (2), R. R. S. 1943, as amended, and placed the children in the custody of the Douglas County social services, dismissed the prayer of the petition which sought termination of parental rights of the natural parents, and continued the matter for a dispositional hearing at a later date.

On October 2, 1975, pursuant to a court order, Tabitha was returned to her parents and the first of several plans was presented to the parents, which said plan was designed to result in the return of all of the children to the family home.

On August 24, 1976, a petition was filed in the interest of Rebecca Ann Chant, a child born to the parties on August 8, 1975, and a supplemental petition was filed in the interest of Tabitha, Jesse, and William. The prayer of both petitions sought termination of the parental rights of both parents. Once again the parents did not contest the detention of any of the children and again stipulations were made

by the parties in regard to the allegations contained in the petitions. On November 16, 1976, all of the children were found to be neglected within the meaning of section 43-202 (2), R. S. Supp., 1978, beyond a reasonable doubt, based on the stipulations entered into by the parties at the adjudication hearing. The issue of termination of parental rights was taken under advisement, and all four children were placed in the custody of the Douglas County social services.

The final hearing in the matter of the termination of the parental rights was held on January 17, 1978, at the conclusion of which the court found that the best interests of the children would be served if they were placed for adoption and the parental rights of the parents were terminated. The journal entry germane thereto contained no specific findings as to why termination was ordered.

The two cases pose identical issues and are considered as one for the purposes of appeal.

The natural parents of the children appealed assigning as error: (1) That the Separate Juvenile Court applied an improper standard of proof in making its decision to terminate the parental rights; and (2) that the decision to terminate parental rights was not supported by the evidence before the court.

A recitation of all of the evidence would serve no useful purpose. One may peruse recent cases, for example, State v. Jenkins, 198 Neb. 311, 252 N. W. 2d 280; and State v. Tibbs, 197 Neb. 236, 248 N. W. 2d 330, if one wishes to seek examples of facts warranting termination of parental rights.

Section 43-209, R. S. Supp., 1978, sets forth the procedure to be applied by the juvenile court in terminating parental rights:

"* * * The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child

and it appears by the evidence that one or more of the following conditions exist: * * * (6) Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, *reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.*" (Emphasis supplied.)

The initial hearing was held on August 28, 1975. The final adjudication to terminate the parental rights was made on January 17, 1978. There were at least six hearings held. The record is replete with evidence of the cooperation of several persons and agencies, all under the guidance of the court, in attempting all sorts of plans and conditions to rehabilitate the parents. The record indicates that while attempts were made by the parents to comply with certain of the conditions contained in these plans, always on a sporadic basis, the record is replete with evidence indicating that cooperation on the part of the parents was entirely lacking.

The appellants' contention that the court must find beyond a reasonable doubt that it would be to the best interests of the children if the parental rights of their natural parents be terminated is in error.

Section 43-206.03 (3), R. S. Supp., 1978, provides as follows: "At the hearing the court shall first consider only the question of whether the minor is a person described by section 43-202. This shall be known as the adjudication. After hearing the evidence on such question, the court shall make a finding and adjudication entered in the minutes based on proof beyond a reasonable doubt, whether or not the minor is a person described by subdivision (3) or (4) of section 43-202 or by a preponderance of the evidence whether or not the child is a person described by subdivision (1) or (2) of section 43-202." The section above quoted provides that proof must be beyond a reasonable doubt whether or not the minor is a person described by subdivision (3) or (4) of section 43-

202, R. S. Supp., 1978. No such standard is set forth in determining the proper disposition to be made of such child. Quite to the contrary, subsection (4) of section 43-206.03, R. S. Supp., 1978, provides: "Strict rules of evidence shall not be applied at any dispositional hearing." This would certainly indicate that the standard of proof would not be beyond a reasonable doubt at an adjudication hearing.

The right of parental custody and control is a natural but not an inalienable right. The public also has a paramount interest in the protection of the rights of children. State v. Jenkins, 198 Neb. 311, 252 N. W. 2d 280.

In determining whether or not parental rights should be terminated, it must be determined that the best interests of the child are served. State v. Jenkins, *supra.*

In cases involving custody of neglected or dependent children and the termination of parental rights in juvenile court, the findings of the trial court will not be disturbed on appeal unless they are against the weight of the evidence. The judgment of the trial court will be upheld on appeal unless there is an abuse of discretion. Those rules are followed by this court even though an appeal of such a case in this court is heard de novo on the record. State v. Jenkins, *supra.*

Ample evidence exists in the record in this case indicating blatant disregard by the parents of the court's orders for approximately 2½ years. Nowhere were there any challenges that these rehabilitation orders were unreasonable.

It should be further noted that all the attorneys who are officers of the court, namely the county attorney, the attorney for the parents, and the guardian ad litem of the children, at the final adjudication hearing on January 17, 1978, on behalf of their clients, agreed the condition of the home under the control

of the natural parents of the children did not at that time warrant return of the children to the home. In State v. Tibbs, 197 Neb. 236, 248 N. W. 2d 330, at p. 243, in speaking of the appellant, the court stated as follows: "Although appellant has indicated a willingness to accept conditions of close supervision of his family by the State Department of Public Welfare if the children are left in his custody, it must be remembered that he has already had one chance to do that, as he was given physical custody of the children under supervision of the Welfare Department from approximately February 11, 1975, the date of the original order of the county court, to approximately August 28, 1975, on which date the county court entered its order providing for the termination of parental rights, a period of over 6 months. During that period, he violated the clear order of the court, and the condition of the children did not appear to have improved. Although the appellant would like additional time to demonstrate his ability to properly care for his children, we point out that this litigation has been pending for approximately 2 years, and the best interests of the children require that it be brought to final conclusion without further delay."

In this case appellants had not one, but numerous chances to comply with the court order over a period approximating 2½ years. If natural parents cannot satisfactorily rehabilitate themselves within a reasonable length of time, it is not in the best interests of the children to unduly delay a decision as to the disposition of the children.

We conclude there is sufficient evidence in the record to justify the action taken by the courts below and the judgment of the Separate Juvenile Court is affirmed.

AFFIRMED.