In re Interests of Charles Anthony Logan, Tyrone Lamont Logan, and Ronelle Logan, children under eighteen years of age. State of Nebraska, appellee, v. Donna Logan, appellant.

281 N. W. 2d 753

Filed July 31, 1979. No. 42177.

Lawrence J. Corrigan and Lisa C. Lewis, for appellant.

Donald L. Knowles, Douglas County Attorney, and Lee C. Brawner, for appellee.

Heard before Boslaugh, Clinton, Brodkey, and Hastings, JJ., and Bartu, District Judge.

Bartu, District Judge.

Defendant-appellant and natural mother, Donna Logan, appeals from the judgment of the Separate

Juvenile Court of Douglas County, entered March 7, 1978, terminating parental rights to her children, Charles Logan, born February 18, 1970; Tyrone Lamont Logan, born September 5, 1971; and Ronelle Logan, born June 18, 1973, and from the order overruling her motion for a new trial entered May 17, 1978. The juvenile court found that the minor children were children "within the meaning of Section 43-202 (2) R. S. Supp., 1974," and that reasonable efforts under court supervision had failed to correct conditions leading to such determination. Parental rights were terminated pursuant to section 43-209 (6), R. R. S. 1943.

In substance appellant assigns as error that the evidence was insufficient to support the juvenile court's findings and order. Appellant also assigns as error that the juvenile court considered hearsay evidence in making its determination. This issue was not presented in written or oral arguments. Accordingly, we do not consider the same to be of merit.

Section 43-202 (2), R. R. S. 1943, defines children within its meaning as "* * * any child under the age of eighteen years (a) who is abandoned by his parent * * * (b) who lacks proper parental care by reason of the fault or habits of his parent * * * (c) whose parent * * * neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child; * * * or (e) who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such child."

Section 43-209, R. R. S. 1943, in part provides: "* * * The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist: * * * (6) Following

upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct conditions leading to the determination."

The following principles govern our review. An appeal of a juvenile case is heard in this court by trial de novo upon the record; notwithstanding, findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses, and those findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion. See, State v. Johnson, 196 Neb. 795, 246 N. W. 2d 591 (1976); State v. Jenkins, 198 Neb. 311, 252 N. W. 2d 280 (1977); State v. Tibbs, 197 Neb. 236, 248 N. W. 2d 330 (1976).

Does the evidence support the juvenile court's findings? In early January 1974, appellant, then 20 years of age, left her three children, all born out of wedlock by three different fathers, in the care and custody of an uncle to one of the children, Michael Neal, 16 years of age, while she went to Denver, Colorado, to seek a better place in which to raise her children and to find employment. While appellant was in Denver, the uncle delivered the children to appellant's mother, and they were subsequently picked up on February 11, 1974, and put into the custody of the Douglas County social services, because the grandmother could not provide care and support for them. The children were then placed in foster care.

An adjudication hearing was scheduled for May 2, 1974, but was continued at the request of the appellant to August 7, 1974.

On August 7, 1974, the parental rights of the natural fathers were terminated, and the matter was further continued to October 15, 1974, again at the request of the appellant, so that she could return to Denver to

make suitable arrangements for housing and find employment. She returned to Denver and during the next 11 months obtained several different jobs, attended college, joined the Moslem faith, and successfully completed drug counseling; but her efforts to rehabilitate herself were unsuccessful. During the same period of time, she was arrested numerous times, convicted of two or more felonies, cohabited with known criminals, was incarcerated in both Denver and Colorado Springs; and on July 10, 1975, she received a 5-year suspended sentence for possession of narcotic drugs.

Appellant returned to Omaha on July 14, 1975, for further hearing on the termination of parental rights. Again, at the request of the appellant, the hearing was continued to December 15, 1975, to allow her to return to Denver to find suitable housing for herself and her children and to find employment.

On December 15, 1975, appellant was granted temporary custody of the children under reciprocal supervision by the Denver department of child welfare upon favorable reports from her Colorado probation officer and drug counselor. She and the children returned to Denver, but efforts as a mother were unsuccessful. She voluntarily relinquished custody of the children to the Colorado department of social services on February 25, 1976, after which they were placed in a Denver foster home. Subsequently, the children were flown back to Omaha; and on May 18, 1976, the Separate Juvenile Court resumed jurisdiction. A detention hearing was held, and the children were placed back in the custody of the Douglas County social services and thereafter placed in foster homes where they presently reside.

The appellant returned to Omaha in November 1976, for further hearing. Thereafter she lived with her mother for 2 months and then obtained her own apartment. She enrolled in beauty school and attended classes regularly.

Further hearing was held February 28, 1977, at which time the court interviewed two of the children. Visitation by the appellant was expanded. Appellant remained in Omaha during the summer of 1977, but she was unsuccessful in getting and keeping employment. She gave birth to another child, born out of wedlock, in late summer of 1977. She then left Omaha for Sacramento, California, where she was arrested for the possession of heroin. Charges were later dropped.

A final hearing was held on February 27, 1978, at which time the appellant was living with an adoptive grandmother in Sacramento, California, having no steady employment or means of support. At that point in time, the children had been in foster homes for most of 4 years and were well adjusted to foster care.

The record stands uncontroverted that on January 31, 1974, the appellant had abandoned her children; failed to provide proper parental care; and had neglected, or was unable or refused, to provide proper and necessary subsistence and other care for the well-being of the children for 4 years. The record further establishes that although given numerous opportunities to rehabilitate herself as a parent, she failed to do so. The appellant was given opportunity after opportunity by the juvenile court to demonstrate her ability to obtain and hold suitable employment and to reorganize her life so that she might provide the proper care for her children. Each time she failed.

The integrity of the family unit, in this instance the continuing legal and social relationship of parent and minor child, is one of the fundamental rights guaranteed by the Constitution of the United States. See, State v. Metteer, 203 Neb. 515, 279 N. W. 2d 374 (1979); Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). It is also clear that the integrity of the family unit depends upon the protec-

tion of its individual members from abuse and ne-
glect. State v. Metteer, *supra*. The parental right
of custody and control creates a duty of care and
support. De novo review establishes that the appel-
lant failed in her parental duties to provide a home,
support, subsistence, education, and other care nec-
essary for the health and well-being of her children
for more than 4 years. She offered no evidence that
there would be any change in her situation and cir-
cumstances in the future.

It was in the best interests of the children that par-
ental rights were terminated. The judgment of the
juvenile court was correct and is affirmed.

AFFIRMED.