298 N.W.2d 143 (1980)
207 Neb. 234
In re Interest of Virginia Nell HILL et al., children under 18 years of age.
STATE of Nebraska, Appellee,
v.
Virginia BOYD, Appellant.
No. 42964.
Supreme Court of Nebraska.
October 31, 1980.
Bruce G. Mason of Ross & Mason, Omaha, for appellant.
Donald L. Knowles, Douglas County Atty., and Marjorie A. Records, Deputy County Atty., Omaha, for appellee.
*144 Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
KRIVOSHA, Chief Justice.
The appellant, Virginia Boyd, appeals from an order entered by the Separate Juvenile Court of Douglas County, Nebraska, which after finding that the minor children of appellant, to wit: Virginia Nell Hill; Randy Boyd, Jr.; Delano Boyd; Maurice Boyd; and Marlando Boyd, then being children under 18 years of age, came within the meaning of Neb.Rev.Stat. § 43-209(2) and (4) (Reissue 1978), terminated all parental rights between the appellant and her minor children. Custody of the minor children was given to the Nebraska Department of Public Welfare for adoptive placement. The parental rights of the two fathers were likewise terminated in this action, but no appeal has been taken from that portion of the order and is not here involved. We believe that the trial court was in error in terminating all parental rights between the minor children and their mother and, therefore, we reverse and remand the order of the Separate Juvenile Court with directions as more particularly set out herein.
The present matter was one which had been before the Separate Juvenile Court on several earlier occasions. The facts, while painful and regrettable, are perhaps, in today's society, not unique. The appellant is a 32-year-old female possessing a 9th grade education, limited job skills, and even more limited finances. While those characteristics, in and of themselves, do not justify a parent's failure to care for her minor children, they do perhaps place the level of care provided by her in a more proper light.
The Boyd children were initially placed in foster care in January 1977. That foster care continued pursuant to an order entered by reason of a stipulation between a deputy county attorney for Douglas County and counsel for appellant on May 12, 1977. The stipulation established that appellant had failed to provide for the hygienic needs of her children and failed to instruct them as to good hygienic habits, as a result of which some or all of the children arrived at school in an unwashed condition, their clothing and body smelling strongly of body odor and urine; and that likewise appellant had failed to properly provide adequate clothing in that the children's clothing was observed to be too large and their shoes were worn out.
The evidence discloses, however, that subsequent to that hearing of May 12, 1977, appellant began a process of attempting to rehabilitate herself to the point that she could demonstrate to the juvenile court that she could handle parenting responsibilities. In that regard, two subsequent hearings were held, one on September 2, 1977, and another on December 2, 1977. The evidence which was adduced at these two subsequent hearings indicated that, while appellant may not have possessed all of the parenting qualities one would hope she would have, she did, nevertheless, love her children and was concerned about attempting to improve her condition so that she might improve the care she provided her children. Whatever failings appellant may have displayed with regard to the care of her children, it was clear from the evidence that her failure was due, in large measure, to her lack of knowledge as to how to be a parent and not by reason of any willful disregard. The State's testimony introduced at the hearing on December 2, 1977, made it clear that appellant's threats and hostility to the social workers was always related to her concern for the well-being of her children.
Following a further hearing on January 13, 1978, the boys were returned to appellant. The daughter remained in a foster home. The evidence discloses that the children and appellant were to live in a new home purchased by appellant's father. Her father and stepmother would also live there and would participate, to some extent, in aiding her in caring for the children and learning parenting skills. At a hearing on April 17, 1978, one of several periodic reviews ordered by the juvenile court, the State's evidence disclosed that appellant was receiving psychiatric therapy, caring for the children, and maintaining a clean *145 home. The court itself commented at the hearing on April 17, 1978, that things were going significantly better than in the past.
At a hearing held on July 12, 1978, another periodic review ordered by the court, the welfare worker reported, "Mrs. Boyd has maintained a clean, adequate home during this period, and each time I have seen the boys, they are clean and well dressed." The report concluded, "Mrs. Boyd has provided an adequate home for her children and she has continued to comply with the court order." As a result of the hearing on July 12, 1978, custody was again continued in appellant.
The evidence then discloses that on October 4th or 5th, 1978, appellant voluntarily requested that her children be returned to foster care. It appears that appellant and a boyfriend who had been living with her had a falling out. As a result of that falling out, he had threatened both her and her children with a knife. Fearing for their safety and being uncertain as to what, in fact her boyfriend might do, she suggested that the children be placed in foster care for their own safety. She likewise knew enough about her own condition to recognize that she was then under stress and felt that she needed some further and additional psychiatric help at that time and that it would be in the children's best interests if they were then in foster care. She asked that the children be placed in foster care until she had a chance to get herself back together. On October 6, 1978, the court entered an order granting the county's motion for immediate custody, ordering placement of the children in foster care, where they remained until the order of the court terminating the appellant's parental rights.
Thereafter, on January 26, 1979, the State filed a supplemental petition setting out a number of allegations about appellant and her care of her minor children and seeking an order terminating her parental rights so that the children might be placed for adoption. The record discloses that, to a large extent, the allegations were based upon information obtained by the county from appellant's former boyfriend. The evidence likewise discloses that many of the claims based on information supplied by the boyfriend could not be supported by the evidence and were ultimately dismissed by the court.
To be sure, there is evidence that appellant had been observed in an intoxicated condition. This always appeared to be after her children had been put to bed for the night. Likewise, on one occasion appellant attempted to consume an overdose of prescription pills which had been given to her by a physician. Although appellant's boyfriend had made a number of accusations about the appellant which led to the filing of the supplemental petition, he did concede at the time of the June 4, 1979, hearing that appellant did the household duties while he was living with her, cooked meals, and washed the laundry. On cross-examination, he conceded that appellant played with the boys and that they got along "great." They loved her and she loved them, according to the witness. He likewise conceded that the discipline she administered was normal and that the children were always well fed and had clean clothes every day for school. The evidence was clear that a substantial improvement had been made by appellant since the hearing in September of 1977. The evidence from the record discloses that the difficulties which are involved in this case are between the caseworkers and the appellant and not between the children and the appellant. While that may, in an appropriate case, be a matter which ultimately denies to the children proper care and justifies terminating parental rights, such does not appear from the evidence to be true in this case.
Following the testimony at the hearing on June 4, 1979, proceedings were held by the court in chambers during which three of the boys were interviewed. All three indicated that they loved their mother and desired to be with her. The trial court concluded, as a result of the hearing of June 4, 1979, that appellant had substantially and continuously or repeatedly neglected her children and refused to give the children the necessary parental care and protection, *146 as required by Neb.Rev.Stat. § 43-209(2), and was, as required and prescribed by Neb. Rev.Stat. § 43-209(4), found to be unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was seriously detrimental to the health, morals, or well-being of the children.
The evidence in the record, however, does not support such a finding. On July 10, 1979, the court held a further hearing at which no oral testimony was taken but several written reports offered as exhibits were considered. The reports included one by a social worker who noted that appellant had moved in with her mother who lived in a house too small to accommodate the boys. The report further stated that appellant had not had a stable situation at any time since the case began, which was directly in conflict with the findings made by the trial court at each of its periodic reviews. A second State exhibit indicated that, in the opinion of a member of the foster care unit, the children required a great deal of discipline. The final exhibit was a report by a social worker who recommended that the parental rights be terminated because of appellant's threatening attitude toward social service workers. The report does not, however, indicate that the children's best interests require the termination.
Cases of this nature are always most difficult to resolve. Everyone wishes to do that which appears to be best for the minor children, yet one cannot be certain what is really best in each situation. It is for that reason that we have established certain basic rules by which we are to be governed in cases of this nature. These rules are intended to recognize the integrity of the family and to bring about parental termination only when that appears to be required and no other reasonable alternative exists.
In State v. Logan, 204 Neb. 204, 281 N.W.2d 753 (1979), we noted that an appeal of a juvenile case is heard in the Supreme Court by trial de novo upon the record. We likewise repeated the oft-cited declaration that the integrity of the family unit is one of the fundamental rights guaranteed by the Constitution of the United States, citing Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The mere fact that we conclude that adoptive parents with more education and more funds might, indeed, provide the children with a higher and better standard of living is not sufficient grounds to terminate the natural relationship which exists between a parent and her children.
Likewise, in the recent cases of State v. Souza-Spittler, 204 Neb. 503, 283 N.W.2d 48 (1979), and State v. Hamilton, 204 Neb. 537, 283 N.W.2d 66 (1979), we noted that an order terminating parental rights under Neb.Rev.Stat. § 43-209 (Reissue 1978) must be supported by clear and convincing evidence.
Our review of this record fails to satisfy us that the basis upon which the termination was made is, indeed, supported by clear and convincing evidence. The evidence discloses that the appellant has a number of shortcomings as a parent and requires further supervision and training. The evidence does not, however, in any clear or convincing manner, support a finding that appellant has substantially and continuously or repeatedly neglected her children and refused to give the children necessary parental care and protection, or that she is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the children, all as found by the court. In the absence of such clear and convincing evidence, the court is without authority to terminate natural parental rights. Certainly the courts are not required to wait until injury has befallen a child. Clear and convincing evidence that the requirements of the statute have been established without evidence of physical harm is, indeed, sufficient in an appropriate case to terminate parental rights. The power to order such termination should, however, be exercised carefully, judiciously, and in a limited manner. There is nothing in the record here to *147 indicate that, under proper supervision provided by the juvenile court, similar to the type of supervision which was provided from January 13, 1978, until October 6, 1978, appellant cannot adequately provide for her children and they, in turn, cannot have their natural mother. Should such continued supervision and time disclose that, indeed, appellant cannot adequately provide for her children and their best interests demand that her parental rights be terminated, there is yet adequate time to do so. It should not be done simply because the social workers have concluded that the natural mother is bothersome or aggressive so long as such action does not result in harm or injury to the well-being of the children or make the mother unfit as a parent. For these reasons, therefore, the order of the Separate Juvenile Court terminating parental relations of the appellant is reversed and the cause is remanded to the Separate Juvenile Court, that court to periodically review the matter to determine whether physical custody can be restored to the appellant or other further orders regarding the children are required.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CLINTON, J., not participating.