IN RE INTEREST OF SWANNIE ELIZABETH MCKEE,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
RICHARD MCKEE AND MARY MCKEE,
NATURAL PARENTS, APPELLANTS.

304 N.W.2d 918

Filed April 24, 1981. No. 43399.

H. Jerome Kinney for appellant.

Donald L. Knowles, Douglas County Attorney, and Francis T. Belsky for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Richard and Mary McKee, appellants and natural parents herein, appeal to this court from an order entered by the separate juvenile court of Douglas County, Nebraska, terminating the parental rights to their child, Swannie Elizabeth McKee, born February 27, 1979. We affirm.

The facts which comprise the background of this matter indicate that on March 30, 1979, the Douglas County Attorney filed a petition in the juvenile court alleging that Swannie McKee was a child within the meaning of Neb. Rev. Stat. § 43-202(1) (Reissue 1978),

in that the child was under the age of 18 and without proper support through no fault of her parents. The petition also alleged that Richard and Mary McKee were unable to discharge their parental responsibilities because they were mentally retarded. In an order entered on that same date, the juvenile court ordered that temporary custody of the child be placed with Douglas County Social Services. The cause was continued for a detention hearing on April 10, 1979, at which time it was established that the Child Protective Services of Douglas County had received a referral from the University of Nebraska Medical Center concerning the infant McKee in March of 1979. At that time Swannie was 2 weeks old, but had gained only one-tenth of a pound in body weight and was experiencing internal bleeding, as evidenced by bloody stools. Testimony at the detention hearing established that the proximate cause of the infant's internal bleeding was the fact that the natural mother had been feeding the baby table foods, such as canned fruit, vegetables, and meat. It was also established that Mary McKee experienced difficulties in understanding instructions on how to care for her child, and that both parents demonstrated poor "parenting" skills. The juvenile court determined that it was in the best interests of Swannie McKee that she remain in the temporary custody of Douglas County Social Services until an assessment could be made as to whether or not Richard and Mary were capable of taking care of the child.

Following a court-ordered psychological evaluation of both parents, an adjudication hearing was held on June 26, 1979. At that time the natural parents admitted that their child was a child within the meaning of § 43-202(1). The court admitted the psychological evaluations into evidence. On July 18, 1979, the court ordered that custody of Swannie McKee be placed in the State Department of Public Welfare for temporary foster care under the supervision of Douglas County Social Services, and also ordered that Richard and

Mary participate in rehabilitative programs, such as mental health counseling, nutrition, positive "parenting," and financial planning.

It next appears that on January 25, 1980, the Douglas County Attorney filed a motion seeking the termination of the parental rights between Richard and Mary McKee as to Swannie McKee. The motion alleged in pertinent part:

"IV. That Swannie Elizabeth McKee comes within the meaning of Nebraska Revised Statutes, Section 43-209 (6) R.S. Supp. 1978, because reasonable efforts, under the direction of the Court, have failed to correct the conditions leading to the aforementioned determination, to wit: A. That the natural parents were ordered by the Court to become involved in mental health counseling and a nutrition program on a regular basis. Both parents have failed, neglected, or refused to involve themselves in both mental health counseling and any nutrition program. B. That the natural parents have failed to become involved in a financial planning program as ordered by the Court. C. That the natural parents have failed to cooperate with the Child Protective Service worker, the Visiting Nurse's Association, Foster Care worker, the Juvenile Court service officer, and the ENCOR worker as ordered by the Court.

"V. That Swannie Elizabeth McKee comes within the meaning of Nebraska Revised Statutes, Section 43-209 (5) R.S. Supp. 1978 because her natural parents are unable to discharge their parental responsibilities because of mental deficiency and there are reasonable grounds to believe such condition will continue for a prolonged indeterminate period, to wit: A. On or about September 28, 1979, Mary McKee, natural mother of said child, was psychiatrically evaluated and diagnosed as being mentally retarded; suffering from epilepsy; evidencing immature behavior; and functioning at the third grade level. B. On or about April 18, 1979, Mary McKee and Richard McKee, natural parents of said

child, were psychologically evaluated. The recommendation of the clinical psychologist was that the child, Swannie Elizabeth McKee, should not be returned to the possession and custody of her natural parents."

On February 27, 1980, a hearing on the motion for termination of parental rights was held, at which time the testimony of Barbara Schuett, the clinical psychologist who had previously examined Richard and Mary McKee, and Dr. Shashi Bhatia, a child psychologist who had also examined Mary McKee, was presented by the State. Both experts testified that their opinion was that Swannie McKee should not be returned to her natural parents because they had not learned the minimum requirements necessary for child care. Barbara Schuett also concluded, to the best of her professional knowledge, that the mental condition of both Richard and Mary McKee would continue for a prolonged indeterminate period. This likewise was the conclusion of Dr. Bhatia as to Mary. Based upon this testimony, the juvenile court found that Swannie McKee was a child within both subsections (5) and (6) of Neb. Rev. Stat. § 43-209 (Reissue 1978) and ordered that the McKees' parental rights be terminated. A subsequent motion for new trial was overruled, and the appellants have appealed to this court, contending that the evidence presented was not sufficient to terminate their parental rights under § 43-209.

At the outset, we note that an appeal of a juvenile case to this court is heard by trial de novo upon the record; and also that the findings of fact by the trial court which heard and observed the witnesses and parties will be accorded great weight, and those findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion. *In re Interest of Morford*, 207 Neb. 627, 300 N.W.2d 795 (1981); *State v. Duran*, 204 Neb. 546, 283 N.W.2d 382 (1979); *State v. Logan*, 204 Neb. 204, 281 N.W.2d 753 (1979). We have also held that an order of the juvenile

court terminating parental rights under § 43-209 must be supported by clear and convincing evidence. *In re Interest of Hill*, 207 Neb. 234, 298 N.W.2d 143 (1980); *State v. Hamilton*, 204 Neb. 537, 283 N.W.2d 66 (1979); *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979).

Section 43-209, the juvenile court act dealing with the termination of parental rights, reads in pertinent part as follows: "The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that *one or more* of the following conditions exist: . . . (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; or (6) Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination." (Emphasis supplied.)

In this regard, we have also held that parental rights may be terminated for any one of the six independent circumstances referred to in the above statute authorizing termination of parental rights. *State v. Burger*, 205 Neb. 340, 288 N.W.2d 22 (1980); *In re Interest of Morford, supra*.

With the foregoing statutes and rules in mind, we conclude that the evidence contained in the record clearly supported the decision of the juvenile court to terminate the parental rights of Richard and Mary McKee. We note that the psychological evaluation of Mary McKee, admitted by the court as exhibit 2, concludes that: "Mary is a small, 29-year-old woman who appears approximately ten years younger than her age. Grooming was marginal. She was spontaneous in interview. At times she would become angry and hostile and

want to terminate the testing, but was easily persuaded back into the evaluation. Mary would not discuss her marriage and was quite defensive about this. The examiner wonders if there are problems in this marriage between her and her husband, and if so, what they are. Not wanting to talk about her marriage would tend to lead one to believe that there were problems of some nature. The questions asked about her marriage were certainly not of an intimate nature.

"Mary functions in the retarded range, achieving at a second or third grade level. She is an epileptic and does not take her medication regularly. Personality and behavior are quite typical of the epileptic.

"*Recommendation:* In the examiner's opinion, this child should not be returned to Mary and her husband for the following reasons: 1. Mary has inadequate knowledge of the appropriate child care and expectations for her child. 2. She does not have the mental capacity to learn the minimum requirements in child care. 3. She uses very poor judgment and reasoning ability. 4. Mary over-reacts to environmental stress, usually in an angry, aggressive manner. 5. Mary takes inadequate care of herself. 6. Even if given support by various agencies, would be inadequate in this examiner's opinion, as she would have all the remaining hours in each day to be responsible for this child.

"In the examiner's opinion, returning the child would deny this child the opportunity to develop to its fullest capacity and the child would be 'set up' to be neglected and also probably physically abused."

Richard McKee's psychological evaluation, which was admitted by the juvenile court as exhibit 4, concluded: Richard comes across as a very inadequate individual in most areas, especially socially. He presented himself for this evaluation in a very filthy condition, however the examiner realizes that his water has been turned off for several weeks. He was not wearing his hearing aid, even though much work had been done by another individual to be sure that it was ready for him prior to this

evaluation. Richard did not take the responsibility of going to get the hearing aid. He does not work, nor does he want to. He has no hobbies or interests and shows little, if any, motivation. Richard functions in the mild range of retardation and is achieving at a first and second grade level. He has a rather significant speech problem and is difficult to understand. Personality pattern is consistent with mental retardation, with features of the inadequate personality. Richard gives himself inadequate care and seems to be a very dependent person.

"The examiner would recommend that this child not be returned to its natural parents. Mary has many inadequacies which are indicated in her report. Richard cannot be depended upon to be a help in this marriage and parenting. All the care would be left up to Mary. Neither individual is prepared for the responsibilities of child care and Richard does not have the capacity nor the motivation to learn. The examiner feels if this child is returned to the home, it would not be able to develop to its best capacity and would be badly neglected and perhaps even physically abused."

We also note the testimony of Dr. Bhatia, who had the opportunity to examine Mary McKee. When asked: "Doctor, it's unfortunate that Mrs. McKee has this problem, but it is a fair statement to say that her condition will continue for a prolonged indeterminate period, if not forever?" Dr. Bhatia responded: "Sure, most probably it will be forever." Dr. Bhatia did not express an opinion with regard to Richard McKee because Richard failed to show up for any of the scheduled evaluations.

The rule is well established that when natural parents cannot rehabilitate themselves within a reasonable time after the adjudication hearing, the best interests of the child require that a final disposition be made without delay. *State v. Chant*, 202 Neb. 750, 277 N.W.2d 97 (1979). That, unfortunately, is the situation in this case.

We conclude, therefore, on a de novo review of the record, that the action taken by the separate juvenile court was correct and supported by the evidence, and that its judgment must be affirmed.

AFFIRMED.