IN RE INTEREST OF D.L.H. STATE OF NEBRASKA, APPELLEE, v. A.H., HIS MOTHER, APPELLANT.

253 N. W. 2d 283

Filed May 4, 1977. No. 41201.

Michael T. Levy, for appellant.

Donald L. Knowles and Francis T. Belsky, for appellee.

John J. Liakos of Liakos & Kuhn, guardian ad litem.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,

McCown, Brodkey, and White, JJ., and Kuns, Retired District Judge.

Spencer, J.

This is an appeal by the mother from the termination of parental rights to the minor child, D.L.H. The name of the father is unknown. Jurisdiction over him was obtained by publication and his parental rights were also terminated. The mother alleges 11 assignments of error, which we condense to the following: (1) Sections 43-202 and 43-209, R. S. Supp., 1974, are unconstitutional; (2) the denial of procedural due process of law; and (3) the insufficiency of the evidence to sustain the finding. We affirm.

The proceedings resulting in termination of the appellant's parental rights were commenced on June 3, 1975, by the filing of a petition in the Separate Juvenile Court of Douglas County, Nebraska, alleging generally D.L.H. was dependent and neglected, without proper parental care, and was therefore a child within the provisions of sections 43-202(1) and 43-202(2)(b), R. S. Supp., 1974.

The court ordered the child placed in the temporary custody of the Douglas County welfare department until a hearing could be held upon the matter of custody pending adjudication. While one of the appellant's assignments is the insufficiency of the evidence, we do not deem it essential that the evidence adduced be set out in detail. We have carefully examined the record and are convinced that the evidence establishes beyond a reasonable doubt that the best interests of the minor child requires the termination of parental rights herein. We therefore will only briefly summarize the essential facts herein.

Appellant, at the time the petition was filed in 1975, was approximately 45 years of age. She separated from her husband in 1966, and was divorced 2

years later. Two children were born of her marriage. One is now emancipated and the other is with her father. D. L. was born July 4, 1969. A worker from adult protective services referred appellant to the board of mental health. On May 13, 1975, appellant was placed in the psychiatric unit of the Douglas County Hospital. D.L. was placed in foster care on the same date. While in the hospital, appellant was diagnosed as suffering from manic depressive illness, hypomania.

Appellant had also been hospitalized in 1972. The record indicates that the diagnosis at that time was of alcoholism and schizophrenia, chronic undifferentiated type. Several hearings were held in this matter: A detention hearing, two motion hearings, an adjudication hearing, and a disposition hearing.

The record indicates the social agencies worked extensively with appellant in an attempt to sufficiently rehabilitate her to the extent that she could properly take care of her child. The testimony of several case workers who had had contact with appellant since 1972, described her as an erratic, unstable person. Their testimony indicates she was addicted to alcohol and refused to respond or discuss any plans for herself and her child.

The testimony of several neighbors was adduced. One of them observed appellant talking to various trees. Another who observed her approximately 5 times a week, testified that appellant was intoxicated 80 percent of the time. On a number of these occasions her son was present with her. Another neighbor testified she observed appellant intoxicated on almost a daily basis from early September 1974, through May 5, 1975. This neighbor further testified that she observed appellant kick a child of 5 years of age, and pick him up and shake him. She further testified that on May 5, 1975, the first meal D.L. had eaten all day was the evening meal served at her home.

Appellant was called to testify on her own behalf at the detention hearing. She stated she was not taking her prescribed medicine. Her son D. L. doesn't have a father, couldn't have a father. She views the existence of D.L. as that of a donor situation. She further testified she did not feel she was mentally ill, but did admit she might have a drinking problem. She refused to elaborate on the drinking problem.

A psychiatric evaluation was made on October 12, 1976, under court order. The diagnoses of the psychiatrist was as follows: (1) Personality disorder — hysterical type; (2) manic depressive psychosis — hypomania; and (3) possible habitual excessive drinking. The psychiatrist stated: "The prognosis in the case is I think very guarded especially in view of the fact that she refused to recognize that she suffers from a mental illness and refuses to cooperate in any treatment program set up for her." The psychiatrist further stated, "The question of whether this patient is capable of providing proper parental supervision for her 7 year old child is a very difficult one. In this examiner's opinion she does suffer from a mental illness which at times reaches psychotic proportions — and certainly she has a history of periodic excessive drinking. She is unpredictable in her behavior at times.

"Therefore, in conclusion it must be this examiner's opinion that at the moment, at least, this patient is unable to adequately resume full responsibility for the care and welfare of a 7 year old child."

Appellant's problem had been continuous since at least 1972. The agencies had tried to work with her. The child had been under the custody of the welfare department for more than a year. During this time the mother refused to recognize her condition, or was unable to do so. In any event, the time is now past when the court can further experiment in this situation. The right of a parent to maintain the cus-

tody of his or her children is a natural but not an inalienable right and the public has a paramount interest in the protection of the rights of a child. State v. Tibbs, 197 Neb. 236, 248 N. W. 2d 330 (1976).

In appellant's favor, the record indicates that the child was generally properly fed and clothed, and the apartment was kept clean. There is no evidence in the record of abuse of the child who the evidence indicated appeared to be normal and healthy. However, during the 1974-75 school year, while the child was with appellant, he missed 48 days of school.

An appeal of a case brought under Chapter 43, article 2, R. R. S. 1943, as amended, is heard in this court by trial de novo upon the record, although the findings of fact made by the trial court will be accorded great weight because the trial court heard and observed the parties and the witnesses. State v. Tibbs, *supra.*

We now consider appellant's contention that the statutes defining the acts constituting parental neglect, child dependency, and grounds for termination of parental rights provide constitutionally impermissibly vague standards. Appellant argues there are insufficient guidelines by which a violation of these statutes may be fairly and nonarbitrarily determined.

The due process command imposed by Amendment XIV to the Constitution of the United States, and Article I, section 3, Constitution of Nebraska, translates into two basic requirements. The statute's language must be sufficiently specific that persons of ordinary intelligence must not have to guess at its meaning. The statute must contain ascertainable standards by which it may be applied. This does not demand total absence of vagueness in a statute, but merely requires that a statute provide adequate notice of what conduct it requires or prescribes as well as guidelines by which a violation of

the statute may be fairly and nonarbitrarily determined.

The court found sections 43-202 and 43-209, R. S. Supp., 1974, to be applicable in this case. Although the court did not state the grounds on which it terminated appellant's parental rights, it is obvious it was relying on section 43-209(4) and (5), R. S. Supp., 1974. These involve the habitual use of intoxicating liquor and mental illness or deficiency.

Most decisions invoking the constitutional void for vagueness doctrine have dealt with statutes and ordinances imposing criminal sanctions. It is clear, however, that this doctrine applies equally to civil statutes. Yet even in criminal statutes the language adopted need not afford an interpretation approaching mathematical certainty. In determining the sufficiency of notice, a statute must of necessity be examined in light of the conduct with which a defendant is charged. Parker v. Levy, 417 U. S. 733, 94 S. Ct. 2547, 41 L. Ed, 2d 439 (1974).

Section 43-202, R. S. Supp., 1974, so far as material herein, provides: "(2) Any child under the age of eighteen years * * * (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian, or custodian neglects, is unable, or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child; * * * or (e) who is in a situation * * * dangerous to life or limb or injurious to the health or morals of such child; * * *."

Section 43-209, R. S. Supp., 1974, so far as material herein, provides: "The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist: * * * (4) The parents are unfit by reason of debauchery, habitual

use of intoxicating liquor or narcotic drugs * * * which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child; (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indefinite period; * * *.".

These provisions appear to us to be sufficiently specific to apprise the appellant of why the State felt it necessary to terminate her parental rights. This language does convey sufficiently definite warning as to prescribed conduct when measured by common understanding and practice. Due process requires no more. United States v. Petrillo, 332 U. S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877 (1947). Reasonable people, including this appellant, should understand that habitual drunkenness, when she had the sole custody and control of a 6-year-old child, would produce a situation and an environment detrimental to his welfare.

Appellant has been told that she is suffering from a mental illness. She has repeatedly failed and refused to take the medicines provided for its treatment. There is no uncertainty in the meaning of section 43-209, R. S. Supp., 1974, as it applies to the appellant.

We hold the statutes under attack provide standards which the average intelligent person should be able to understand and by which he or she can regulate his or her conduct. It is true, the terms of the statutes are somewhat broad, yet it is practically impossible to draw them with greater specificity and still adequately protect the dependent and neglected child.

As we said in State v. Shiffbauer, 197 Neb. 805, 251 N. W. 2d 359 (1977): "The prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been

drafted with greater precision. All the Due Process Clause requires is that the law give sufficient warning that men may conform their conduct so as to avoid that which is forbidden." There is no violation of the constitutional right to due process in the statutes attacked by appellant.

It is apparent to us that the trial court properly found appellant was unable to properly discharge her parental responsibilities and that this condition would continue for a prolonged indeterminate period. Appellant's parental rights were properly terminated. The first and paramount consideration in any case involving the custody of a child is the best interests of the child. State v. Loomis, 195 Neb: 552, 239 N. W. 2d 266 (1976).

The judgment of the trial court is affirmed.

AFFIRMED.