IN RE INTEREST OF FAITH ANN SOUZA, A CHILD UNDER
EIGHTEEN YEARS OF AGE. STATE OF NEBRASKA,
APPELLEE, V. BONITA SOUZA SPITTLER,
NATURAL MOTHER, APPELLANT.

283 N. W. 2d 48

Filed September 4, 1979. No. 42348.

John B. Ashford of Bradford & Coenen, for appellant.

Donald K. Knowles, Douglas County Attorney, and Francis T. Belsky, for appellee.

Heard before BOSLAUGH, CLINTON, WHITE, and HASTINGS, JJ., and KORTUM, District Judge.

WHITE, J.

This is an appeal from an order of the Separate Juvenile Court for Douglas County, Nebraska, terminating the parental relationship between Faith Ann Souza and her mother, Bonita Souza, now Bonita Spittler.

From the time of the child's birth on January 8, 1976, until August 2 of that year, the child lived with her mother at various residences in Omaha. At least some of the residences were suggested by Douglas County Social Services. On August 2, 1976, a petition was presented by the county attorney for Douglas County alleging that Faith Ann Souza was a homeless, destitute child under the age of 18 years within the meaning of section 43-202 (1), (2) (a), and (2) (b), R. R. S. 1943, and asking that immediate custody of the child be taken from Bonita Souza, the natural mother, and further, that after notice and hearing the parental rights be terminated under section 43-209 (2), R. R. S. 1943.

Section 43-202, R. R. S. 1943, defines the jurisdiction of the juvenile court. It states, in pertinent part: "(1) Exclusive original jurisdiction as to any child under the age of eighteen years, who is homeless or destitute, or without proper support through no fault of his parent, guardian, or custodian;

"(2) Exclusive original jurisdiction as to any child under the age of eighteen years (a) who is abandoned by his parent, guardian, or custodian; (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian;

(c) whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child; (d) whose parent, guardian, or custodian neglects or refuses to provide special care made necessary by the mental condition of the child; or (e) who is in a situation or engages in an occupation dangerous to life or limb or injurious to the health or morals of such child; * * *."

Section 43-209, R. R. S. 1943, the termination section, provides in part, after summons and notice: "The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist:

"(1) The parents have abandoned the child for six months or more immediately prior to the filing of the petition;

"(2) The parents have substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection;

"(3) The parents, being financially able, have willfully neglected to provide the child with the necessary subsistence, education or other care necessary for his health, morals or welfare or have neglected to pay for such subsistence, education or other care when legal custody of the child is lodged with others and such payment ordered by the court;

"(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child;

"(5) The parents are unable to discharge parental

responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; or

"(6) Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

The trial court appointed counsel for the mother, Bonita Souza, and appointed a guardian ad litem to represent the interests of Faith Ann Souza. On August 11, 1976, the trial court entered an order placing temporary custody of Faith Ann Souza with Douglas County Social Services for foster home placement. The order for temporary custody was not opposed by Bonita or by her attorney.

On November 8, 1976, hearing was held on the termination petition.

The natural father, who had never married Bonita Souza, did not appear and his parental rights were subsequently terminated pursuant to section 43-209 (2), R. R. S. 1943. That portion of the order is not contested on appeal.

The court, after making findings of fact, found that as to the mother, appellant here, there was insufficient evidence at that time to terminate parental rights. The court did find, however, that Faith Ann was a child within the meaning of section 43-202 (1) and (2), R. R. S. 1943, and retained jurisdiction with custody to remain in Douglas County Social Services pending a disposition hearing.

At the disposition hearing on January 3, 1977, the court continued the custody of Faith Ann Souza in Douglas County Social Services and ordered Bonita Souza to comply with a rehabilitation plan. The plan included the order that Bonita Souza was to participate in therapy at the Immanuel Mental Health Center; obtain and maintain employment or

job training and an adequate income for the support of herself and of her child; obtain and maintain adequate housing and furnishings for herself and her child; become involved in the Positive Parenting Program through the Family Service of Omaha-Council Bluffs; work with the Visiting Nurses Association, obtain any necessary medical treatment for herself, and work with the Child Protective Service worker in the probation office in attempting to comply with the plan of rehabilitation. The order required that the matter be continued for a compliance hearing.

The compliance hearing was held on June 13, 1977. The court also took evidence on a motion for termination of parental rights which had been refiled by the county attorney. The original plan of rehabilitation was amended to delete the requirement of counseling for the mother at Immanuel Mental Health Center. The hearing on the termination motion was continued until August 29, 1977, at which time the court found that the mother had substantially failed to comply with the rehabilitation plan and, accordingly, the child was within section 43-209 (6), R. R. S. 1943, set out above. The court, however, declined to terminate parental rights at that time and set out instead a revised plan of rehabilitation aimed at counseling and education of Bonita in hygiene and child rearing. It provided for weekend visitation in the home by the child every month and required the mother to maintain a clean, physically adequate home at all times.

A review hearing was held on July 18, 1978. At that time the court found that reasonable efforts under the direction of the court over a period of almost 2 years had failed to correct adequately the conditions leading to the previous determinations that the child was within sections 43-202 (1) and (2) and 43-209 (6), R. R. S. 1943. The court therefore terminated the parental rights of the natural mother.

No purpose would be served by explicitly detailing the evidence adduced at the initial hearing in August 1976. There was testimony that the appellant had kissed a 2-year-old child in the genital area. There was also testimony that the appellant "cooed" to her daughter: " 'Mommy will drown you.' " These allegations were denied or explained away by the appellant and, as appears by the trial court's findings of fact, were given little, if any, weight in the determination. The court found that appellant had physically assaulted a woman while that woman was holding Faith Ann. Other than that, the evidence related to and presented a clear picture of a mother who was lacking in either the knowledge or the desire to maintain adequate physical surroundings for a small child. The evidence throughout is overwhelming that Bonita Souza was personally dirty, and that the environment and hygienic care provided for the child were totally lacking. The surroundings frequently reeked of feces and urine. The child suffered from a number of diseases including constant diaper rash, thrush, and cradle cap, all of which, in their persistence, were associated with improper hygiene and care. These problems continued despite efforts of Douglas County Social Services on their own and through the visiting nurses to educate the appellant. It is not seriously argued that this evidence was insufficient to support the court's original finding of jurisdiction under section 43-202, R. R. S. 1943. Rather, the appellant bases her attack on the court's final order terminating parental rights. That attack rests mainly on two grounds: (1) That the statute under which the parental rights of Bonita Souza were terminated is unconstitutional as vague and indefinite; and (2) that there was not "clear and convincing evidence" to show that Bonita Souza had not complied with the orders of the Separate Juvenile Court in the rehabilitation plan. The vagueness objection was answered adversely to ap-

pellant's position in the recent case of State v. Metteer, 203 Neb. 515, 279 N. W. 2d 374. In addition, we note that the "conditions" to which section 43-209 (6), R. R. S. 1943, refers were plainly set forth in the findings of fact and order entered following the original adjudication hearing. That fact is amply illustrated by this colloquy which took place at the June 6, 1977, hearing: "THE COURT: Do you understand what you were doing wrong? MS. SOUZA: Yes, I do. THE COURT: With regard to the child? MS. SOUZA: Yes, I do. THE COURT: What do you understand? MS. SOUZA: That I did not clean her right and take care of her properly." We find the constitutional challenge to the statute on the basis of vagueness to be without merit. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. State v. Shiffbauer, 197 Neb. 805, 251 N. W. 2d 359.

Next we address appellant's claim that: "It was error for the court to fail to find that the burden of proof required to terminate parental rights should be clear and convincing evidence rather than a preponderance of the evidence." Somewhat related are the claims that the statute is unconstitutional for failure to require a showing of a substantial degree of harm prior to termination, and that it was error for the court to terminate the parental relationship upon the evidence presented and to fail to state specifically the reasons for termination. In support of the argument that termination of parental rights should be ordered only upon "clear and convincing" evidence, as opposed to a "preponderance" standard, appellant cites Alsager v. District Court of Polk County, Iowa, 406 F. Supp. 10 (S. D. Iowa, 1975), affirmed in part, 545 F. 2d 1137 (8th Cir., 1976). That holding was based on a determination similar to that made by this court in State v. Metteer, *supra*, that family integrity was a fundamental right.

While our statute, section 43-206.03 (3), R. R. S.

1943, specifies that the initial finding of jurisdiction may be based on a preponderance of the evidence, it does not specify a standard for termination, nor did the juvenile court specifically relate the standard which it applied. We agree that termination should be based on clear and convincing evidence. Because we are convinced, however, that the evidence before the juvenile court clearly satisfied even the stricter "clear and convincing" standard, we decline to reverse on this ground. Although findings of fact by the juvenile court are accorded great weight, the matter is triable de novo in this court. See §§ 43-238 and 25-1925, R. R. S. 1943. In a recent case, we were concerned that the District Court had given excessive deference to the challenged findings of the mental health board. After reviewing the evidence, however, we declined to reverse since the District Court, under whatever standard of review might be applied, could not conceivably have found other than it did. "Where a correct judgment or order has been made, the mere fact that it contains erroneous declarations of law does not require reversal." Lux v. Mental Health Board of Polk County, 202 Neb. 106, 274 N. W. 2d 141.

Although this principle and our de novo review obviate the need for speculation, we add in passing that it clearly appears that the juvenile court was fully aware of the gravity of its order, was actually reluctant to make it, and did so only after receiving a great volume of persuasive evidence at numerous hearings over a 2-year period. The only argument relating to the facts which finds any support whatever in the record is that the appellant showed some improvement at a time shortly before the termination was finally entered. On several visits to the appellant's home in July of 1978 by caseworkers and a visiting nurse, the apartment, although still unkempt, was apparently greatly improved over past conditions. It must be noted, however, that all the evi-

dence on this matter pertained to a period of only 2 weeks. The court cannot be found to have abused its discretion for weighing that fact against the evidence - that the objectionable conditions of the previous 2 years had persisted through May 1978.

The juvenile court exhibited great patience in attempting to aid appellant. When appellant refused, contrary to court order, to continue mental therapy at Immanuel Mental Health Center, that requirement was dropped. When appellant married a steady wage earner, the requirement of employment was dropped. When she was expelled from the Positive Parenting Program classes for immature and disruptive behavior, an alternate plan was ordered. There is no question that the direction of the court was "reasonable," both in the sense of not being too difficult to comply with and in the sense of being calculated to correct the conditions leading to the original determination. As stated by the Iowa Supreme Court: "* * * we will not gamble with the child's future; she cannot be made to await uncertain parental maturity." Long v. Long, 255 N. W. 2d 140 (Iowa, 1977). Here, after 2 years, the objectionable conditions persisted.

We note that this is not the case of a mere "messy house" which has been criticized as a basis for termination. See Matter of Sherol A. S., 581 P. 2d 884 (Okla., 1978). It is, instead, a case of consistently poor sanitary conditions and deficient personal hygiene which could, and quite evidently did, work to the physical injury of the child.

The order of the Separate Juvenile Court terminating appellant's parental rights is affirmed.

AFFIRMED.