IN RE INTEREST OF J.L.L.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
E.F.L., HIS FATHER, APPELLANT.

306 N.W.2d 175

Filed May 29, 1981. No. 43545.

Dennis R. Keefe, Lancaster County Public Defender, and Don C. Bauermeister for appellant.

Ron Lahners, Lancaster County Attorney, and Richard Hautzinger for appellee State.

Richard McClain, guardian ad litem.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

E.F.L., appellant and natural father of J.L.L., appeals to this court from an order entered by the separate juvenile court of Lancaster County, Nebraska, terminating his parental rights to his son, who was born October 1, 1970. We affirm.

The record in this case reveals that the juvenile court first became involved with J.L.L. on November 30, 1976, when the Lancaster County attorney filed a petition alleging that the child was within the meaning of Neb. Rev. Stat. § 43-202(1) (Reissue 1978) because of lack of proper parental care and support. The petition alleged: "Said child is without proper parental care and support in that his father is incarcerated in the Lincoln City Jail, Lincoln, Nebraska, and the whereabouts of his mother is unknown. There are no known relatives who are able to provide care for said child, all in Lancaster County, Nebraska." After a hearing on the petition, held on December 13, 1976, the court determined that the allegations were true, adjudicated J.L.L. to be a dependent child within the court's jurisdiction, and placed him in the temporary custody of the Lancaster County Department of Public Welfare for placement in an approved foster home.

On January 24, 1977, the Lancaster County attorney filed a supplemental petition with the court, alleging the child to be within both subsections (1) and (2) of § 43-202, for the reason that: "Said child is without proper parental care due to the fault and habits of his father and in that his mother is unable to provide care for him. The father of said child has been sentenced to a term of 28 months to 5 years at the Nebraska Penal and Correctional Complex on a conviction of grand larceny. The father of said child has a history of anti-social, criminal behavior and has allowed the child to accompany him while in the commission of burglaries. The lifestyle and criminal activity of the father has provided an unsuitable model for the child. The mother of said child has had no contact with the child for two years. She lives in a board and room situation which is

not adequate for the care of the child and because of mental and emotional instability is unable to provide care and supervision for the child, all in Lancaster County, Nebraska." A hearing on the supplemental petition was held on February 9, 1977, following which the court entered its decree finding that J.L.L. was both a dependent and neglected child as defined in the aforementioned statute. The hearing was continued to March 3, 1977, at which time the court determined that the child should not participate in any visitations with his father until psychological evaluations of the appellant had been completed.

On May 20, 1977, the matter came before the juvenile court for further hearing to determine the visitation rights of the parties herein. At that time, the court found that the child would not be harmed by closely supervised visits with his father, and ordered that they take place; provided, however, that the assigned caseworker could alter the visitations if the child was adversely affected by such visitations.

E.F.L. was paroled from the Nebraska Penal and Correctional Complex on November 21, 1978. It appears that he then found employment in Lincoln, rented an apartment, and continued his supervised visits with his son. On January 16, 1979, on his motion for a modification of the court's visitation order, the court ordered that he could begin unsupervised visitations with his son, beginning February 26, 1979. The order of the juvenile court, however, was objected to for a number of reasons by the guardian ad litem for the child, including that the visitations were against the express wishes of the child; because of the previous threats of the father to remove the child from the jurisdiction; and also in view of the statements of the child that he had been sexually abused by his father. The guardian ad litem appealed the juvenile court's visitation order to this court, and the order allowing unsupervised visitation was stayed during the pendency of the appeal. In our opinion in that case we reversed the order of the juvenile court which had allowed unsupervised visitations

between the child and his father. However, on November 21, 1979, and prior to the release of our opinion above referred to, the father was arrested and was charged with two counts of burglary. He pled nolo contendere to both counts, and was subsequently sentenced to two terms of 5 to 10 years in the Nebraska Penal and Correctional Complex, said terms to run concurrently with each other.

Thereafter, on January 23, 1980, the Lancaster County attorney filed a second supplemental petition in which he prayed for an order terminating all parental rights between the father and son. A hearing on the petition was held on January 31, 1980, at which time the natural mother of the child, since divorced, appeared and entered her "admission" to the allegations of the petition that she was unable to care for and support her child. The father also appeared at the hearing and entered a denial to the allegations contained therein. The court then entered an order accepting the admission of the mother and set the date for the formal contested hearing on the allegations against the father.

The contested hearing was held on March 5 and March 10, 1980, on that portion of the second supplemental petition which requested termination of the parental rights of E.F.L. In its decree, entered on March 24, 1980, the court found that the allegations of neglect and dependency were substantiated by clear and convincing evidence, and ordered that the father's parental rights be terminated. A subsequent motion for new trial was overruled, and he has appealed to this court, contending that the evidence presented was not sufficient to terminate his parental rights and that Neb. Rev. Stat. § 43-209(2), (4), and (6) (Reissue 1978) should be held unconstitutional for vagueness.

It is well established that an appeal of a juvenile proceeding to this court is heard de novo upon the record; that the findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses; and the trial court's findings will not be set aside on appeal unless

they are against the weight of the evidence or there is a clear abuse of discretion. *In re Interest of Goodon,* 208 Neb. 256, 303 N.W.2d 278 (1981); *In re Interest of Morford,* 207 Neb. 627, 300 N.W.2d 795 (1981); *State v. Duran,* 204 Neb. 546, 283 N.W.2d 382 (1979).

Under § 43-209 the juvenile court may terminate parental rights between the parents of a child and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that any one or more of the six specified conditions exist, including:

"(2) The parents have substantially and continuously or repeatedly neglected the child and refused to give the child necessary parental care and protection;

. . . .

"(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child;

. . . .

"(6) Following upon a determination that the child is one as described in subdivision (1) or (2) of section 43-202, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination."

It is the general rule that an order of the juvenile court terminating parental rights under § 43-209 must be supported by clear and convincing evidence. *In re Interest of Hill,* 207 Neb. 234, 298 N.W.2d 143 (1980); *State v. Wedige,* 205 Neb. 687, 289 N.W.2d 538 (1980); *State v. Souza-Spittler,* 204 Neb. 503, 283 N.W.2d 48 (1979).

We have reviewed the record in the present case and have concluded that the evidence contained in the record amply supports the decision of the juvenile court to terminate the parental rights of E.F.L. The foster care mother of the child testified that the child exhibited signs of mental and emotional stress, including

nightmares and hyperactivity, after being with his father. She indicated that his condition had improved after he was removed from his father's care. She also stated that the child became upset when he learned of his father's criminal activities.

Carol Crumpacker, a child psychologist at the Child Guidance Center in Lincoln, testified that she had met with the child once a week for approximately 1 year. She stated that he exhibited conflicting feelings toward his father and that he had experienced feelings of guilt because of his father's criminal conduct. Dr. Crumpacker also testified that the child expressed much anger and ambivalence toward his father, and that it would be in the child's best interests to be placed in a stable family environment. Dr. Crumpacker stated that she thought it would be best to terminate the parental rights of the father.

Sandy Carmichael and Kathleen Dombrowski, both social workers with the Lancaster Public Welfare Department, testified that they had supervised visitations between the child and his father. The visitations took place at the Nebraska Penal and Correctional Complex and at an apartment rented by the appellant after his parole. Both women stated that there was very little interaction between the boy and his father during the visitations, and that the father spent most of his time discussing his future plans with the social workers. It appears that the father told both social workers that if his parental rights were terminated he would take his son away when he got out of prison. Both of the social workers stated that the son was apprehensive about visiting his father.

Finally, at a hearing held in this matter on March 3, 1980, the son testified as to his treatment by his father. He stated that there had been several occasions when sexual contact had occurred between him and his father. He also stated that his father had told him to keep the sexual contacts a secret between the two of them. In addition, he testified that his father had taken

him with him when he burglarized an apartment.

The trial court found that the termination of the parental rights was justified, basing its decision on the established evidence of continuing criminal conduct of the type in which the father had involved the son in the past, and his continued and repeated neglect and failure to provide proper parental care and support. In its order the court did not specifically mention the evidence of his sexual abuse of the child, although there is ample evidence in the record to establish this fact.

We determine that the findings of the trial court are supported by clear and convincing evidence in the record on appeal, and that the order terminating the parental rights of the father is correct and should be affirmed.

We also wish to comment briefly on appellant's assignment of error that § 43-209(2), (4), and (6) (Reissue 1978) is unconstitutionally vague. We have previously passed upon this issue in several prior opinions of this court, and the constitutionality of § 43-209 has been upheld with respect to the termination of parental rights under the above statute. See, *In re Interest of Morford*, 207 Neb. 627, 300 N.W.2d 795 (1981); *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979); *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979); and *State v. A.H.*, 198 Neb. 444, 253 N.W.2d 283 (1977). In *Linn v. Linn*, 205 Neb. 218, 286 N.W.2d 765 (1980), we had under consideration the constitutionality of Neb. Rev. Stat. § 42-364 (Reissue 1978), which deals with the termination of the parental rights of children in dissolution actions. In *Linn* we held that the termination of parental rights because it is in the "best interests and welfare of the children," as provided for in § 42-364(4), is not sufficiently specific to apprise parents of why the state may find it necessary to terminate parental rights and is an insufficient warning of prohibited conduct by which the parents can regulate their parental activities. As such, it is impermissibly vague and is unconstitutional. In that case, however, we approved the consti-

tutionality of § 43-209, stating at 223, 286 N.W.2d at 768-69: "What a far cry those standards are from the ones involved in this case. Section 42-364, R.R.S. 1943, provides in part as follows: '(4) Whenever termination of parental rights is placed in issue by the pleadings or evidence, the court shall forthwith appoint an attorney as guardian ad litem to protect the interests of any minor children. Such guardian ad litem shall forthwith personally investigate the facts and circumstances on all matters pertinent to the best interests and welfare of the children. *If it appears to the guardian ad litem that the best interests and welfare of the children may require the termination of the parental rights of one or both parents*, he shall apply to the court in writing or orally on the record for such termination. *The court may then terminate the parental rights of one or both parents after notice and hearing and shall serve notice thereof upon the parents.*' (Emphasis supplied.)

"The statute goes on to provide that the court shall notify the parents of their right to counsel at the expense of the county if they are indigent. However, it sets forth no guidelines for the court to follow, although presumably the permission to terminate parental rights after notice and hearing shall be as the 'best interests and welfare of the children may require.' This is the same general standard required of the juvenile courts as set forth in section 43-209, R.R.S. 1943, without the additional requirement that at least one of six conditions going to the unfitness of the parents has been found to exist. In addition to the two cited in State v. A.H., 198 Neb. 444, 253 N.W.2d 283 (1977), the statute also sets forth abandonment of the child, repeated neglect and withholding of parental care, failure to provide necessary subsistence, education, or other care necessary for the child's health, or that the child has been determined to be a child described in section 43-202 (1) or (2), R.R.S. 1943."

In support of his contention that § 43-209(2), (4), and (6) is void for vagueness, the appellant relies principally

on an Iowa case, *Alsager v. District Court of Polk Cty., Iowa*, 406 F. Supp. 10 (S.D. Iowa 1975), in which the U.S. District Court, in discussing the constitutionality of the Iowa statute with reference to the termination of parental rights, did hold the provisions of that statute to be unconstitutionally vague. We believe the statutes of Nebraska and Iowa are clearly distinguishable, and that the provisions of § 43-209 are much more specific and precise than are the provisions of the Iowa statute. However, we need not decide that issue in this case, even if we were inclined to change our previous position with reference to the constitutionality of the Nebraska statute, for the reason that the *Alsager* case was appealed to the U.S. Court of Appeals, Eighth Circuit, which case is found at 545 F.2d 1137 (1976). In that case the court affirmed the decision of the lower court on the grounds that the plaintiffs were denied procedural due process because of failure to receive adequate notice, and also that the state did not have a compelling interest sufficient to justify permanent termination of the parent-child relationships. However, with reference to the attack on the Iowa statute because of vagueness and overbreadth, the court on appeal stated at 1137-38:

"Other issues reached by the district court, *viz.*, the vagueness and overbreadth attacks upon the facial validity of *Code of Iowa* § 232.41(2)(b) and (d), 406 F. Supp. at 17-21 and 24, and the appropriate standard of proof at a parental termination hearing, 406 F. Supp. at 25, need not now be resolved in order to effect a plenary disposition of the present controversy between the parties, and we do not reach such issues. . . .

. . . .

"Since we expressly reserve a ruling on the question of whether the Iowa statutory provisions at issue in this case are facially unconstitutional, there is no collateral estoppel effect to be accorded the district court's resolution of this question in the future."

We have frequently held that the right of a parent to maintain the custody of his or her children is a natural

but not inalienable right and the public has a paramount interest in the protection of the rights of a child. *State v. A.H.*, 198 Neb. 444, 253 N.W.2d 283 (1977); *State v. Logan*, 204 Neb. 204, 281 N.W.2d 753 (1979). We think it is clear that the State does, indeed, have a "compelling state interest" justifying termination of parental rights, particularly under the facts of the instant case as set out and discussed in some detail above.

We feel that we should point out one further matter with reference to the status of the natural mother of J.L.L. In its order terminating the parental rights of the father in this case, the court stated: "The legal custody of [J.L.L.] is continued with the Lancaster County Department of Public Welfare for care in an approved foster family home, subject to further hearings and orders of this court as they relate to the rights of [the natural mother]."

We conclude, therefore, that appellant's assignments of error are without merit and that the separate juvenile court of Lancaster County properly terminated the parental rights of appellant based upon the evidence in the record, and we determine that the order of the separate juvenile court was correct and should be affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurs in result.