IN RE INTEREST OF SEAN DAVID DITTER AND TISHA LYNNE DITTER, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. DAVID D. DITTER, APPELLANT.

322 N.W.2d 642

Filed July 23, 1982. No. 81-875.

Steven A. Goeden, for appellant.

Paul Schumacher, Platte County Attorney, and Eugene Schumacher, for appellee.

Charles H. Rogers, guardian ad litem.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The appellant, David D. Ditter (Ditter), appeals from an order originally entered by the county court of Platte County, Nebraska, sitting as the juvenile court for Platte County, Nebraska, and thereafter affirmed by the District Court for Platte County, Nebraska, terminating Ditter's parental rights to his two minor children. We affirm.

The record in this case relates a story which can only be described as tragic and pathetic. On the evening of January 23, 1979, Ditter, then separated from his wife who was seeking to have their marriage dissolved, broke into his wife's apartment by smashing a plate glass patio door. Ditter announced to his wife and a girl friend who was then in the apartment that he intended to kill his wife, and ordered the girl friend to take the parties' two minor children from the apartment. At that time, one of the children was scantily clad and the other, still wet from a bath, was unclothed. Ditter then took his wife into the bedroom of the apartment, stripped her of her clothes, and, in the presence of two police officers who had just arrived on the scene, premeditatedly, maliciously, and intentionally murdered his wife by shooting her four times with a .357-magnum revolver while she pleaded with him for her life. The children, then ages 3½ and 2, were taken into custody by a social worker who had arrived on the scene shortly after the killing and Ditter's arrest.

The record discloses that this was not the first time Ditter had committed an act of violence upon

his wife. The records amply support the conclusion that Ditter had frequently mistreated his wife during their 8-year marriage. Ditter was shown to be an habitual and chronic user of drugs and alcohol and had, on December 12, 1978, been charged with first degree sexual assault and assault and battery arising by reason of Ditter having attempted to rape his wife after they had separated.

On January 24, 1979, the county court of Platte County, Nebraska, sitting as a juvenile court, exercised its emergency powers and placed the two minor children with the Multi-County Social Service Unit No. 143, ordering that the children be kept with the maternal grandparents, where they have resided ever since. Ditter made no effort to object and, in fact, did not enter his appearance in the juvenile proceedings until January 3, 1980, nearly 1 year after the proceedings were filed. On October 29, 1979, Ditter pled guilty to the crime of murder in the first degree, and on November 15, 1979, was sentenced by the court to imprisonment in the Nebraska Penal and Correctional Complex for and during his lifetime, where he now remains. Ditter was brought from the penitentiary and allowed to be present at every stage of the juvenile proceeding following the entry of his appearance in the case, and participated both personally and through his court-appointed counsel.

Following a trial, the juvenile court, on October 27, 1980, found that it had jurisdiction over the minor children under the provisions of Neb. Rev. Stat. § 43-202(2)(b) (Reissue 1978), which provides in part that the juvenile court shall have jurisdiction as to any child under the age of 18 years "who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian." The juvenile court further found that it was in the best interests of the minor children that David Ditter's parental rights be terminated, and so entered an order to that effect.

Ditter assigns three basic errors. The first two may be quickly disposed of. His first two assignments are to the effect that the court denied him due process of law because it denied his motion for discovery, and the trial court abused its discretion when it allowed into evidence highly prejudicial hearsay statements purportedly made by the children's mother during her lifetime. As we have indicated, the record in this case makes it clear that these two assignments are wholly frivolous and may be quickly denied. To begin with, an appeal of a juvenile case to the Supreme Court is heard de novo upon the record. *In re Interest of J.L.L.,* 209 Neb. 76, 306 N.W.2d 175 (1981); *In re Interest of Hill,* 207 Neb. 233, 298 N.W.2d 143 (1980); *In re Interest of Morford,* 207 Neb. 627, 300 N.W.2d 795 (1981). Therefore, even if the trial court had considered evidence which was not admissible, our review of this record is de novo and we are therefore able to disregard any evidence which should have been excluded. However, a reading of the juvenile court's order makes it clear that the findings upon which the juvenile court based its order of termination did not give any weight to the statements purportedly made by the mother during her lifetime, except as they were otherwise supported by the evidence. Ditter's claim that he is therefore entitled to a new trial in this matter, based upon a claim that inadmissible hearsay evidence was considered by the court, may be disregarded and overruled.

Likewise, Ditter's claim that he was denied due process of law because his motion for discovery was denied by the trial court is without merit. On July 24, 1980, Ditter filed a "shotgun" motion for discovery and inspection, asking the Platte County attorney to produce "any written statements, physical evidence, scientific reports, summaries of statements, the names and addresses of possible prosecution witnesses, and any other evidence that may be

prejudicial to the State's case and may assist the parent including the names and addresses of any person whose testimony would not support the prosecuting attorney's case and would assist the father, any written statements of any person that would be helpful to the father, and any other evidence of which the prosecuting attorney or the police have knowledge.'' How the State could have determined what documents to produce, had the trial court sustained the motion, is difficult to imagine. Nevertheless, the trial court found that since the issues in the termination case required evidence which was discoverable in a companion murder case filed contemporaneously with this case and that in fact extensive discovery had been accomplished by attorneys for the parent, David Ditter, in the companion case, the motion should be denied. Furthermore, the record establishes that the trial began on September 3, 1980, during which time the State presented its entire case. The case was then continued until September 22, 1980, on which date trial was completed. Ditter therefore had 19 days to adequately prepare, after having seen and heard all of the State's case, and, if additional time was required, could have made a showing at that time or requested a continuance, neither of which he did. During oral argument before this court, Ditter's counsel was specifically asked what evidence he was unable to discover and what evidence came as a surprise. He was unable to offer the court any response to either question. It is clear from the record that Ditter was not surprised or unable to prepare for trial and was not denied either due process of law or the effective assistance of counsel, and the trial court did not abuse its discretion in denying Ditter's motion to produce. That assignment of error can likewise be overruled.

Having disposed of Ditter's first two assignments of error, that leaves us, then, with what is essen-

tially the sole and only issue in this appeal, to wit, whether the parental rights of David Ditter to his two minor children, under the circumstances and facts in this case, should be terminated.

If § 43-202(2)(b) was ever intended to have application when granting to the juvenile court jurisdiction over a child under the age of 18 who lacks proper parental care by reason of the fault or habits of his parent, it was intended to apply in this case. David Ditter voluntarily entered a plea of guilty to the first degree murder of the children's mother. While the trial court found the murder was not so heinous as to justify the imposition of the death penalty, it comes as close to being heinous as any murder can and still fall short. Ditter's two minor children have been deprived of the love and affection of both their mother and father, if, indeed, there was any love and affection by the father prior to the time he murdered their mother, solely by reason of his intentional, vicious act—an act for which he must now spend the remainder of his natural life incarcerated, or at least until a time after these children have passed through their formative years and reached their majority. By reason of his long incarceration, he is unable to do anything of any significance in helping to raise these two children and has likewise deprived them of their mother's assistance in raising them. We have said before, "Although a parent's parental rights should not be terminated for the sole reason of conviction of crime and incarceration, the fact of incarceration may be considered along with other factors in determining whether parental rights should be terminated." *In re Interest of Wagner and Russell,* 209 Neb. 33, 36-37, 305 N.W.2d 900, 902 (1981). This is a view which has frequently been adopted by other courts and has resulted, in similar cases, in the parental rights of the surviving parent who committed the murder being terminated. See, *In re Welfare of Scott,* 309 Minn.

458, 244 N.W.2d 669 (1976); *Matter of B.A.M.,* 290 N.W.2d 498 (S.D. 1980); *George v. Anderson,* 135 Ga. App. 273, 217 S.E.2d 609 (1975). In the case of *In re Sego,* 82 Wash. 2d 736, 513 P.2d 831 (1973), noted by us in the *Wagner and Russell* case, *supra,* the Washington court said at 740, 513 P.2d at 833: "As noted initially, courts attempt to protect the rights of both parents and children, giving primary consideration to the welfare of children. It is necessary to consider each case on its own facts. *In re Palmer, supra.* For example, a parent's misconduct, even if criminal in nature, does not automatically support permanent child deprivation. By the same token, imprisonment, alone, does not necessarily justify an order of permanent deprivation. *In re Staat,* 287 Minn. 501, 178 N.W.2d 709 (1970). On the other hand, a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are the parent's conduct prior to imprisonment and during the period of incarceration." See, also, *In re Adoption of Kurth,* 16 Wash. App. 579, 557 P.2d 349 (1976); *In re Guardianship of Davidson,* 259 So. 2d 762 (Fla. App. 1972); *Matter of Troy,* 27 Or. App. 185, 555 P.2d 933 (1976).

The facts in this case, considered by the juvenile court initially, and now considered by this court reviewing the order of termination de novo, establish that not only did Ditter commit the murder but he did so in such a manner that it must have a lasting effect on the children. Ditter now asks this court, as well as his children, to put out of mind the fact that after ordering the mother to remove all of her clothing, thereby subjecting her to the utmost humiliation, and while she begged for her life in the presence of two law enforcement officers who could not stop him, he fired four bullets into her for no reason

other than to show her who was boss. Ditter argues to us that he is now rehabilitated and has found a new way of life. If that is true, we are delighted and commend him for his efforts, but we are unable to turn the clock back. What was done is indelible and cannot be so quickly set aside. We also have testimony to the effect that if not restrained by incarceration, Ditter might once again revert to his previous lifestyle of violence and destruction.

While we have frequently held that the right of the parent to maintain the custody of his or her children is a natural right, we have likewise held that it is not an inalienable right and the public has a paramount interest in the protection of the rights of a child. *In re Interest of J.L.L.,* 209 Neb. 76, 306 N.W.2d 175 (1981); *State v. A.H.,* 198 Neb. 444, 253 N.W.2d 283 (1977); *State v. Logan,* 204 Neb. 204, 281 N.W.2d 753 (1979). Not only are we confronted with a situation where these children arrived at their difficult situation by reason of their father's vicious acts, but we further have the fact that this father is not able to provide these children with any parental support, either physically, emotionally, or financially, during their minority. When asked at oral argument how Ditter could provide any parental care for the children, counsel for Ditter indicated that he could talk to them during visiting hours at the penitentiary. Moreover, he asserted that Ditter should be afforded the right to keep his parental rights so that he could arrange for the termination himself at his choice and select the family to adopt his children. At least he was realistic to recognize that adoption for these children is the only way in which they may yet have any semblance of a family unit and receive any family love and affection from a set of parents. That being the case, Ditter is not entitled to make that decision under the circumstances in this case. The record establishes by clear and convincing evidence that the best interests of these minor children in this

case demand that Ditter's parental rights be terminated now so that a full and future life for these minor children can yet be provided. The judgment of the District Court affirming the action of the juvenile court terminating the parental rights of David Ditter to his two minor children is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.