In re Interest of J.C.G. and T.R.G., children
under 18 years of age.
State of Nebraska, appellee, v. T.L.G., natural
mother, appellant.

333 N.W.2d 680

Filed May 6, 1983. No. 82-499.

Spencer W. Dillon, for appellant.

Donald L. Knowles, Douglas County Attorney, and W. Mark Ashford, for appellee.

Krivosha, C.J., Boslaugh, McCown, White, Hastings, Caporale, and Shanahan, JJ.

White, J.

This is an appeal from the separate juvenile court for Douglas County, Nebraska, of an order terminating parental rights of a natural mother to her two minor children. We affirm.

J.C.G. and T.R.G., born June 22, 1973, and June 28, 1975, respectively, were born to the natural mother out of wedlock and have different fathers. The children first were introduced into the juvenile court system in August 1976 when J.C.G. was 3 and T.R.G. was 1. The occasion was the natural mother's conviction for forgery and 2-year sentence to the Women's Reformatory at York, Nebraska. Neither of the putative fathers has acknowledged his child, and only one has ever contributed limited, minimal support to the natural mother or the minor children. The children have been in foster home care since that time, nearly 7 years.

After her release some progress was made in rehabilitation. The natural mother obtained a job and visited her children on occasion. The progress was

ended abruptly when the natural mother was arrested, convicted, and sentenced for robbery of a federally insured bank. She was incarcerated in Texas and was released on March 5, 1981, and employed in Omaha as a computer reservation operator and lived in a halfway house while on parole. Visits were infrequent with the children.

In January 1982 the natural mother vanished and a federal warrant for violation of parole was issued. Shortly after the time of the hearing on termination she was in custody of federal authorities at the Douglas County Corrections Center. She made no attempt to contact her court-appointed attorney or the court. Her whereabouts were discovered by her attorney, who filed a motion for new trial. Again, after notice was served, she did not contact anyone, although there is some suggestion that she may have been moved to a federal institution during the interval between the termination hearing and the hearing on the motion for new trial.

An order terminating parental rights under Neb. Rev. Stat. § 43-209 (Reissue 1978) must be supported by clear and convincing evidence. *In re Interest of Hill*, 207 Neb. 233, 298 N.W.2d 143 (1980).

The petition charged in 1976 at count IV that J.C.G. and T.R.G. lacked proper parental care by reason of the faults or habits of the natural mother. Since that petition, nearly 7 years have elapsed and the natural mother has been in three separate penal institutions, twice for serious crimes and once for violation of parole.

The separate juvenile court exercised considerable restraint in attempting to preserve the natural mother's rights as a parent, especially since it is the best interests of the minor children that the law holds to be of utmost importance. Seven years of criminal violations, separation, and foster care are enough. Especially pertinent are these words from *State v. Souza-Spittler*, 204 Neb. 503, 511, 283 N.W.2d 48, 52 (1979): " '[W]e will not gamble with

the child's future; she cannot be made to await uncertain parental maturity.' "

The decree terminating parental rights is affirmed.

AFFIRMED.