IN RE INTEREST OF K.L.N. AND M.J.N., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. T.A.N., APPELLANT.
407 N.W.2d 189

Filed June 12, 1987.   No. 86-540.

Carolyn A. Rothery of Byrne, Rothery, Lewis, Bedel, Tubach & Zielinski, for appellant.

Donald L. Knowles, Douglas County Attorney, and Francis T. Belsky, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.
This is an appeal from an order of the separate juvenile court of Douglas County, terminating the parental rights of appellant, T.A.N., to her minor children, K.L.N. and M.J.N. Appellant contends that the court erred in terminating her parental rights based on her poverty and that the State failed to prove by clear and convincing evidence that her rights should be terminated. Appellant further contends that she was coerced into voluntarily relinquishing her children to foster care prior to the filing of the juvenile court petition, that the court-ordered plan of rehabilitation was impossible for her to complete, and

that the decision of the juvenile court should be set aside in the absence of a record of the review proceeding of June 17, 1985. For reasons hereafter stated, the decision of the separate juvenile court of Douglas County is affirmed.

The record shows the following. The female children, K.L.N. and M.J.N., were born out of wedlock on January 31, 1982, and February 10, 1984, respectively. Each child had a different father. On April 6, 1984, appellant voluntarily placed the children with the Nebraska Department of Social Services, which placed them in foster homes on April 9. This was done because the appellant did not think it was fair to the children that they be "bounced around to different homes" just because appellant was having difficulty maintaining a permanent residence. Due to the difficulty of placing two children of such a young age in the same foster home, the children were separated. On April 11, 1984, a petition was filed by the Douglas County attorney's office alleging that the children came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1982), in that they lacked proper parental care by reason of the faults and habits of the appellant, their natural mother. A detention hearing was held on April 19, 1984, to determine where the children would reside pending adjudication of the matter. The appellant did not resist continued detention, and the court ordered that custody of the children remain in the Nebraska Department of Social Services for temporary placement in foster homes.

An adjudication hearing was held on July 9, 1984. At this hearing witnesses for the State testified with regard to appellant's parenting skills. Bonnie Bremer, a worker for Child Protective Services (CPS), testified she responded to a call from a relative of the appellant, alleging that the living situation of appellant and her two children was not fit for children. The witness testified that initially the appellant would not cooperate with the investigation. The CPS worker finally met with the appellant after the appellant and her children were asked to leave the home in which they were staying and had moved into a women's temporary shelter in Omaha, Nebraska. The evidence adduced at the adjudication hearing showed the appellant had been living in public housing in Lincoln, Nebraska, until

January of 1984, when she was asked to leave because she was behind on her rent and had "trashed out" the apartment. Subsequent to being evicted by the housing authority the appellant and her children moved to Omaha, where she lived at two different locations with friends. The appellant voluntarily left one residence due to "personal problems and arguing" and was asked to leave the second residence because the friends did not want to be responsible for appellant's improper care of the children. The appellant then took the children to the women's shelter, at which time Bremer was able to meet with her. By the time of this initial meeting on April 6, 1984, the appellant had already spent her entire ADC check for the month of April. Appellant told the CPS worker that she would stay at the shelter until her next check arrived, as she had done on earlier occasions at similar temporary shelters. Evidence adduced at a subsequent hearing showed appellant was receiving approximately $350 per month in ADC payments. Appellant testified that while receiving that amount she just could not keep food in the house for herself or her children.

Additional testimony adduced at the adjudication hearing showed CPS workers had been referred to appellant's case on at least nine other occasions. Most of the referrals involved allegations of general neglect, such as the care of the children and the amount of food on hand. Two of the referrals involved allegations of medical neglect. On one such occasion Sandy Carmichael, a CPS worker, was asked to investigate a "labial tear" on the older child. The appellant had no idea how or when the injury had occurred. Carmichael testified that the physician who examined the child was concerned, in that such an injury would be extremely painful and it would be very difficult not to know when it had occurred. The second medical neglect referral involved a bump on the child's groin area which was not receiving any attention.

The State adduced additional testimony showing that appellant exhibited poor care and supervision of the children and was uncooperative with those people trying to assist her in her parenting skills. Finally, there was testimony showing that appellant had been mistakenly giving medication to the younger child rather than to the older child for whom it had

been prescribed.

A parent aide testifying on behalf of the appellant told the court she found appellant to be cooperative and an adequate housekeeper. At the time of the parent aide's involvement with the appellant, the appellant was pregnant with her second child. However, when asked by the court whether she had any concerns about the care the child was receiving, the witness told the court she was concerned in that the appellant would often have men come into her house and this caused some concern about the appellant's neglecting the child when there were other people in the house. The witness also told the court she felt that appellant was not being completely honest with her concerning the circumstances of her life.

At the close of this hearing, the separate juvenile court of Douglas County found the children to come within the meaning of § 43-247(3)(a) in that the appellant had failed to provide a permanent, stable, and independent residence for the family; had failed to properly budget her ADC money, resulting in the children's not having sufficient food and many of the bills' not being paid; and had failed to cooperate with the many agencies attempting to help her in improving her less than adequate parenting skills. The court found it to be in the best interests of the children that they remain in the custody of the Nebraska Department of Social Services foster care placement. A dispositional hearing was set for August 29, 1984.

At the dispositional hearing the State adduced in evidence, without objection, reports of Karen Swartz of CPS and Frank Kros, the court service officer, as well as the psychological report on the appellant as prepared by Peter Knolla, a psychologist. The report of Swartz indicated the children were adjusting well in their respective foster homes. The report also indicated that appellant had visited the children on 14 of 17 scheduled visitations. The report of Kros showed that appellant had moved for approximately the seventh time since April of 1984. The psychological report indicated that appellant was functioning in the borderline retarded range of intelligence. She was diagnosed as having a mental deficiency and a passive-aggressive personality. She was found to behave extremely impulsively without thinking of the consequences of her

actions. It was also shown at this hearing that appellant had just begun a new job that was to pay more than ADC. The court ordered that the children remain in foster care placement. Additionally, the court's order required that appellant (1) maintain steady employment, (2) obtain and maintain appropriate permanent housing, (3) complete a parent training program, (4) be allowed reasonable visitation rights, and (5) establish and maintain a budget.

The matter was before the court on review hearings on December 3, 1984, and January 21 and May 2, 1985, at which times substantially similar orders were entered by the court.

An additional review hearing was held on June 17, 1985. The court reporter could not find the record of the proceedings of this hearing, and no record of those proceedings is before this court. By affidavit of the court reporter, the reports submitted at that hearing are before this court. Those reports show that compliance with the rehabilitation plan was minimal. The appellant had been unable to maintain suitable housing or employment. Visitation was poor despite all transportation arrangements being made by CPS. It was the recommendation of the court service worker that a motion for termination of parental rights be filed, and the court ordered said motion be filed.

The motion for termination of parental rights was filed on July 26, 1985, alleging that the children came within the meaning of Neb. Rev. Stat. § 43-292(6) (Reissue 1984) in that reasonable efforts under the direction of the court had failed to correct the conditions that led to the determination that the children came within the meaning of § 43-247(3)(a). A hearing was held on November 13, 1985. The appellant was not present at the hearing. After a preliminary examination, the court found proper notice had been served on appellant and had been received by her. Evidence was adduced showing that the court-ordered plan of rehabilitation had not been followed. Testimony was adduced showing that in the 15-month period from April of 1984 through June of 1985 the appellant had moved at least 15 times and had resided at a minimum of 10 different locations, in addition to time spent living on the street. It was also shown that appellant refused to follow through with

counseling or cooperate with CPS and that appellant did not visit with her children on all available dates. During the time from April 11, 1985, after appellant had moved to Lincoln, to the date of the filing of the motion for termination, the appellant only made three visits to the children, despite the fact that all transportation needs were being provided by CPS. From July of 1985 to November of 1985, the appellant visited her children on only six occasions. Appellant herself, at a later date, testified that her visits were at times once a week, once every 2 weeks, or 1 or 2 months apart. After the close of the State's evidence appellant's attorney requested a continuance until the appellant was before the court. The juvenile court granted this motion.

The adjudication hearing was continued to April 10, 1986, at which time appellant appeared. Appellant adduced evidence to show that while on ADC, a legitimate source of income, she was able to provide proper housing for herself and her children. The appellant also testified that her oldest child did not want to remain in foster care. On cross-examination the appellant admitted she had no proper housing nor suitable employment. Appellant testified that she had not fully cooperated with the service workers assigned to help her in her parenting skills, but she would not accept responsibility for not cooperating.

In an order dated April 23, 1986, the separate juvenile court of Douglas County, having found that the minor children came within the meaning of § 43-292(6), terminated the parental rights of the appellant to the children. The appellant timely appealed to this court.

The law in the State of Nebraska concerning review of an order terminating parental rights is well settled. Such an order will be reviewed by this court de novo on the record, while according great weight to the findings of the trier of fact, the juvenile court, because that court heard and observed the parties and the witnesses. *In re Interest of J. W.*, 224 Neb. 897, 402 N.W.2d 671 (1987); *In re Interest of D.J. et al.*, 224 Neb. 226, 397 N.W.2d 616 (1986). The right of parents to maintain custody of their children is a natural one, and the order terminating that right must be supported by clear and convincing evidence and should only be issued as a last resort

when no other alternative exists. *In re Interest of J. W., supra; In re Interest of Hochstetler*, 215 Neb. 546, 339 N.W.2d 916 (1983). In any event, however, the primary consideration in a termination proceeding is the best interests of the children. *In re Interest of J. W., supra; In re Interest of J.S., S.C., and L.S.*, 224 Neb. 234, 397 N.W.2d 621 (1986).

The appellant first assigns as error the terminating of parental rights based on appellant's poverty, and the lack of clear and convincing evidence in support of the termination order. She contends that her rights were terminated based on her poverty, but we find, after a de novo review of the record, that the termination was not dependent on the circumstance that appellant is not a rich person but, rather, that appellant has failed to correct the conditions which led to the determination the minor children were children under § 43-247(3)(a), although reasonable help was offered to her under the direction of the court. We have held that while the juvenile court is not required to implement a plan of rehabilitation, the failure to comply with a plan which has been implemented presents an independent reason justifying termination of parental rights. *In re Interest of J. W., supra*. The question we are presented with is whether the evidence supporting the termination order is clear and convincing. We believe that such clear and convincing evidence is in the record.

At the disposition hearing held on August 29, 1984, the appellant was again ordered to comply with a five-step plan of rehabilitation. This plan called for the appellant to maintain suitable employment and suitable housing, to complete a parent training program, and to maintain a budget with assistance, and provided for reasonable visitation. At the first review hearing held on December 3, 1984, it was shown that appellant had accomplished two of the goals set in the court's order. Appellant had obtained and maintained steady employment between August and December of that year and was able to secure a two-bedroom house which was suitable for the children. The parenting program called for in the court's order was postponed until the appellant had maintained her employment and housing and had custody of the children. The appellant was also complying with the order in that she was

working on her budget with Betty Cartwright, an ENCOR worker, and was faithfully visiting the children. Even though the appellant was maintaining employment, it was shown that she had temporarily quit her job for 10 days in connection with a move to Lincoln. Through the intervention of Cartwright, the appellant was able to regain her job upon her return to Omaha. The evidence further showed that, while appropriate housing had been found, the appellant was facing possible eviction for violating her rental agreement by allowing other adults to live in the house. The court issued substantially the same order but provided for extended visitation.

On January 21, 1985, the matter was again reviewed. At this time it was shown that appellant's compliance was improving in that she had maintained her employment and regular visitation. The appellant's housing situation was not shown to have improved. Appellant was still allowing other adults to reside at the residence, in violation of the rental agreement. In addition, a problem had arisen concerning the possible sexual abuse of the older child during an extended visitation with appellant. The record shows appellant had the children on extended visitation during the weekends of December 7 and 8, and 24 and 25, 1984. After the children returned to the foster homes following these visits, the foster mother of the older child had noticed the child was exhibiting sexually acting-out behavior. Specifically, the foster mother reported to Karen Swartz of CPS that the older child was playing with her vagina all the time. Swartz conducted an interview of the child, at which time the child stated, "Daddy hurt me, Daddy hurt my butt." An investigation into the matter was conducted by the Omaha Police Division. Appellant was questioned concerning the two adult males living with the appellant at the time of the alleged sexual abuse. When asked if she was alone, the appellant held up two fingers to the investigating police and pointed to the closet. Appellant then told the officers that the two men who were living with her were hiding in the closet. Appellant stated that they were hiding because they were afraid the CPS worker or the landlord would find them. After this hearing, extended visits were canceled until the matter of the alleged sexual abuse was resolved.

Appellant's next review hearing was held on May 2, 1985. It was shown that in the time since her last review in January, the appellant had lost her job as well as her place of residence. Compliance with the rehabilitation plan was again minimal. The record shows that appellant had moved to Lincoln without notifying the court of her whereabouts, had been fired from her job due to excessive absenteeism, and had been evicted from her house because she failed to adhere to the rental agreement, in that she allowed other adults to live with her. At this time the court again ordered appellant to show compliance with the plan within 45 days.

The appellant's compliance with the program was never shown to have improved. We hold that the record establishes clear and convincing evidence to support the termination of appellant's parental rights based on her failure to follow the court-ordered plan of rehabilitation.

The appellant further contends that she was deceived into the voluntary relinquishment of her children to foster care on the promise that they would be provided with temporary, stable housing, only to have a juvenile court petition filed immediately thereafter. The record is devoid of any showing of inducement or deception on behalf of the Nebraska Department of Social Services in connection with the voluntary relinquishment of appellant's children. Appellant testifies that the children were placed in foster care because the appellant felt it was unfair to subject them to the lifestyle she was leading. The record shows that in the 3 months preceding April 6, 1984, the date on which the children were placed in foster care, the appellant had had three different residences. The placement of the children was done voluntarily by appellant, and at the first adjudication hearing, appellant did not object to the children's remaining in foster care. There is no merit in appellant's argument that she was deceived into giving up her children.

The appellant further argues the court-ordered plan of rehabilitation was unreasonable. We have held that when a rehabilitation plan is implemented, the plan must be reasonable and conducted under the direction of the juvenile court before failure to comply with the plan can be an independent reason for termination. *In re Interest of L.J., J.J., and J.N.J.*, 220 Neb. 102, 368 N.W.2d 474 (1985). The plan involved in the case

at bar required only that the appellant maintain suitable housing and suitable employment, participate in a parent training program, maintain regular visitation, and establish and maintain a budget. The evidence showed that for a short time the appellant generally complied with the plan, but she did not continue to do so. We cannot say that a plan is unreasonable when compliance therewith is prevented only by the fault of the appellant. The appellant demonstrated compliance was possible for her, but she refused to continue the plan for unknown reasons. The plan in and of itself was not unreasonable.

Finally, the appellant contends the decision of the juvenile court should be set aside in the absence of a record of the proceedings of the review hearing held on June 17, 1985. An affidavit of the court reporter stating that the record of the June 17 proceedings is missing is in the record before this court. Exhibits 1, 2, and 3, which were offered into evidence at that hearing, are before this court. The exhibits include a report of the court service officer and a case plan review submitted by Karen Swartz. These reports recommend that a motion for termination be filed in light of appellant's lack of cooperation and failure to comply with the rehabilitation plan. We review the record de novo. We have before us a complete record of the adjudication hearing and the hearing on the motion for termination. We find that it is not prejudicial to the interests of the appellant that a record of the proceedings of the review hearing of June 17, 1985, is not before the court.

It has now been over 3 years since the children were first placed in foster care. We find it to be in the best interests of the children in this case that the parental rights of appellant be terminated. We have held that we will not gamble with a child's future and that children cannot be made to wait uncertain parental maturity. *In re Interest of J.S., S.C., and L.S.*, 224 Neb. 234, 397 N.W.2d 621 (1986); *In re Interest of M.L.B.*, 221 Neb. 396, 377 N.W.2d 521 (1985); *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979). We hold the evidence supporting the termination to be clear and convincing, and in the absence of error the decision of the separate juvenile court of Douglas County is affirmed.

AFFIRMED.